**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION**

|  |  |
|---|---|
| IN RE: AFLIBERCEPT PATENT LITIGATION | MDL No.:  1:24-md-3103-TSK |
| **THIS DOCUMENT RELATES TO:**<br>1:25-cv-74-TSK | |

**REGENERON'S REPLY IN SUPPORT OF ITS
MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES AND DISMISS
<u>CERTAIN COUNTERCLAIMS</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. iii

ARGUMENT .......................................................................................................................... 1

I.      The Court Should Strike and Dismiss Amgen's Inequitable Conduct Defense and Counterclaim (Defense 13 and Counterclaim 4). ................................................................. 1

        A.      Amgen Inadequately Alleges Any Material Misrepresentation of Inventorship. .... 3

                1.      The supposed inventorship misrepresentation is a disguised written-description challenge. ................................................................................................. 3

                2.      Amgen does not adequately plead a material misrepresentation. ............... 5

        B.      Amgen Inadequately Alleges Material Misrepresentation with Regard to the "No New Matter" Statement ........................................................................................... 8

        C.      Amgen Inadequately Alleges Specific Intent To Deceive. ................................... 9

II.     The Court Should Dismiss Amgen's Antitrust Counterclaims (Counterclaims 6-7). ...... 10

        A.      Amgen Fails to Allege Fraud as to the '099 Patent. ............................................ 10

        B.      Amgen's Antitrust Claims Based on the Twelve Other Patents Also Fail. .......... 11

                1.      Amgen's antitrust claims based on the twelve other patents should have been raised long ago in the 2024 Litigation. ............................................... 11

                2.      Amgen's antitrust claims based on the twelve other patents fail to allege an antitrust injury caused by Regeneron. ................................................. 13

III.    The Court Should Dismiss and Strike Amgen's Counterclaims and Defenses Based on California's UCL, Patent Misuse, Laches, and Unclean Hands. ...................................... 14

CONCLUSION .................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Advanced Magnetic Closures v. Rome Fastener*,
    607 F.3d 817 (Fed. Cir. 2010)...................................................................................4

*AirFacts, Inc. v. Amezaga*,
    30 F.4th 359 (4th Cir. 2022) ...................................................................................13

*Amgen v. Sanofi*,
    598 U.S. 594 (2023)....................................................................................................5

*Andritz Inc. v. Cortex N. Am. Corp.*,
    2020 WL 4495267 (D. Or. Aug. 4, 2020)..................................................................6

*Ariad Pharm. v. Eli Lilly*,
    598 F.3d 1336 (Fed. Cir. 2010)..................................................................................3

*Bayer CropScience AG v. Dow AgroSciences LLC*,
    2011 WL 6934557 (D. Del. Dec. 30, 2011)............................................................14

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
    972 F. Supp. 2d 748 (D. Md. 2013) ........................................................................13

*BLM Prods. v. Covves*,
    2017 WL 8811269 (C.D. Cal. Oct. 26, 2017)...........................................................4

*Burlington Indus. v. Milliken & Co.*,
    690 F.2d 380 (4th Cir. 1982) .....................................................................11, 12, 13

*Care, Ltd. v. Laurain*,
    98 F.4th 1081 (Fed. Cir. 2024) .................................................................................9

*CMC Materials, LLC v. DuPont de Nemours, Inc.*,
    No. 20-738, Dkt. 218 (D. Del. Nov. 21, 2023) ......................................................14

*Epic Games, Inc. v. Apple Inc.*,
    67 F.4th 946 (9th Cir. 2023) ...................................................................................14

*Exergen Corp. v. Wal-Mart Stores*,
    575 F.3d 1312 (Fed. Cir. 2009)............................................................................3, 5

*Fiskars, Inc. v. Hunt Mfg. Co.*,
    221 F.3d 1318 (Fed. Cir. 2000)...............................................................................10

*FMC Corp. v. Manitowoc Co.*,
    835 F.2d 1411 (Fed. Cir. 1987)...............................................................................11

*Illumina, Inc. v. BGI Genomics Co.*,
    2020 WL 571030 (N.D. Cal. Feb. 5, 2020) ...................................................6

*Impact Engine v. Google*,
    2020 WL 3414627 (S.D. Cal. 2020) ..........................................................4

*In re Gabapentin Pat. Litig.*,
    648 F. Supp. 2d 641 (D.N.J. 2009) ..........................................................15

*In re Gabapentin Pat. Litig.*,
    649 F. Supp. 2d 340 (D.N.J. 2009) ..........................................................14

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ......................................................14

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
    863 F.2d 867 (Fed. Cir. 1988) ................................................................10

*N. Telecom, Inc. v. Datapoint Corp.*,
    908 F.2d 931 (Fed. Cir. 1990) ..................................................................7

*Nemet Chevrolet v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ....................................................................6

*Neutrino Dev. Corp. v. Sonosite, Inc.*,
    512 F. Supp. 2d 1004 (S.D. Tex. 2007) ...................................................9

*PerSeptive Biosystems v. Pharmacia Biotech*,
    225 F.3d 1315 (Fed. Cir. 2000) ................................................................4

*Reilly v. Apple Inc.*,
    578 F.Supp.3d 1098 (N.D. Cal. 2022) ....................................................14

*Rothman v. Target Corp.*,
    556 F.3d 1310 (Fed. Cir. 2009) ................................................................8

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    2011 WL 4007334 (D. Minn. Sept. 8, 2011) .....................................6, 7, 8

*Tank Insulation Int'l., Inc, v. Insultherm, Inc.*,
    104 F.3d 83 (5th Cir. 1997) ....................................................................12

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) .............................................1, 2, 5, 6, 11

*Tippman Eng'g, LLC v. Innovative Refrigeration Sys., Inc.*,
    2020 WL 1644985 (W.D. Va. Apr. 2, 2020) ............................................15

*TransWeb, LLC v. 3M Innovative Props. Co.*,
   812 F.3d 1295 (Fed. Cir. 2016)..........................................................................................11

*Wilson Tool Int'l Inc. v. Mate Precision Tooling Inc.*,
   2018 WL 6706326 (D. Minn. Apr. 19, 2018) .....................................................................6, 9

*Young v. Lumenis, Inc.*
   492 F.3d 1336 (Fed. Cir. 2007)...........................................................................................7

## OTHER AUTHORITIES

35 U.S.C. § 112 ......................................................................................................................3

35 U.S.C. § 120 ......................................................................................................................3

Manual of Patent Examining Procedure ...........................................................................7, 8

Restatement (Second) of Torts § 892A (1979) .....................................................................13

Fed. R. Civ. P. Rule 9(b)..........................................................................................................2

Fed. R. Civ. P. Rule 13(a).................................................................................................11, 12

Faced with Regeneron's motion to dismiss, Amgen abruptly backpedals.  On its inequitable conduct claim, Amgen abandons its baseless "deliberate omission" theory and retreats from its astonishing claim that Amgen's employees "were the true inventors" of Regeneron's patent.  Its remaining arguments lay bare Amgen's real tactic—to turn a garden-variety disagreement about written description into a meritless assertion of fraud.  On its antitrust claims, Amgen offers no straight-face justification for taking the exact opposite legal position on compulsory counterclaims in this Court than Amgen took in prior litigation elsewhere.  And while Amgen now candidly concedes that "it chose to take on" and "agreed to include" the patents asserted in this case, it fancifully maintains that Regeneron should pay for Amgen's resulting, self-inflicted harm. Amgen's challenged counterclaims have no business being in this case; they should be dismissed.

## ARGUMENT

I.    **The Court Should Strike and Dismiss Amgen's Inequitable Conduct Defense and Counterclaim (Defense 13 and Counterclaim 4).**

Amgen has not adequately pleaded *either* that Regeneron made a material misrepresentation or omission while prosecuting the '099 Patent *or* that it did so with specific intent to deceive the PTO—*both* of which are required to state a claim or defense of inequitable conduct.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc).  Confronted with that reality, Mot. 5-9, Amgen has jettisoned its accusations of material omission: despite previously alleging that Regeneron made "deliberate omissions," *e.g.*, ECF 666 at 89, Amgen now concedes that its inequitable conduct theory is "*not* an omission theory," ECF 703 ("Opp.") 12.  Amgen's remaining theories are two assertions of material misrepresentation: (i) Regeneron's implicit representation that its own scientists invented the subject matter of the '099 Patent when, in Amgen's view, "there are *no* actual inventors of the '099 Patent claims," and (ii) Regeneron's prosecution statement "that the claims of the '099 Patent did not present new

matter," which the examiner agreed with by granting the patent upon review of the claims and specification.  Opp. 13, 15.  Both theories are as meritless as the one Amgen withdrew.

These alleged "misrepresentations" are nothing of the sort—they are not representations of fact, but rather routine, permissible attorney argument involving the issue of written description. Amgen alleges that the '099 Patent is invalid for lack of written description—*i.e.*, Amgen disagrees that the inventors' disclosure in the specification adequately discloses the formulations recited in the claims.  *E.g.*, ECF 666 at 120.  This "Section 112" challenge is a routine defense in patent litigation that will be resolved over the course of this case; it is not relevant to Regeneron's Motion to Dismiss.  Amgen, moreover, does not allege Regeneron misrepresented any fact pertinent to this analysis—there is no dispute about the content of the specification that Regeneron contends supports the '099 Patent's claims.  Nor, despite Amgen's efforts to concoct an "inventorship" issue, is there any dispute that *Regeneron's* inventors are responsible for the work the patent discloses.  Amgen's *only* source of alleged "misrepresentation" stems from its disagreement with the conclusion of Regeneron (and the patent examiner) based on those facts.  Regeneron asserted during prosecution that the '099 Patent claims are adequately supported by the specification.  The patent examiner agreed with Regeneron.  Amgen does not.  But Amgen's minority view on the merits does not transform a run-of the-mill *invalidity* argument into inequitable conduct *fraud*, pleaded with Rule 9(b) specificity and punishable by treble antitrust damages, where the sole theory of "misrepresentation" is that Regeneron did not argue *Amgen's* position to the PTO.

Amgen's inequitable conduct claims are precisely the sort of abusive litigation tactic that led the *en banc* Federal Circuit to bemoan the "plague" of inequitable conduct challenges in patent cases.  *See Therasense*, 649 F.3d at 1289.  To be clear, Regeneron maintains that Amgen will fail to show clear and convincing evidence of invalidity of the '099 Patent's claims for lack of written

description.  But Regeneron's Motion does not require adjudication of Amgen's written-description defense.  Even were Amgen to succeed on that defense, all that matters for this Motion are that (i) Regeneron's statements were attorney argument, not representations, (ii) Amgen has not adequately alleged them to be material, and (iii) Amgen has failed to plead facts to support "a reasonable inference" that Regeneron made *any* such statements with the necessary "inten[t] to deceive the PTO."  *Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).

### A.    Amgen Inadequately Alleges Any Material Misrepresentation of Inventorship.

#### 1.    The supposed inventorship misrepresentation is a disguised written-description challenge.

Amgen's Opposition removes all doubt that its "inventorship" argument is anything more than an overblown written-description challenge.  Its Answer had alleged "that employees of Amgen, not Regeneron, were the true inventors," ECF 666 at 13, 86, 105, but Amgen could not defend that assertion.  It now retreats to an argument that "there are *no* actual inventors of the '099 Patent claims" because "the '099 Patent's specification does not support any claims to buffer-free aflibercept formulations."  Opp. 13.  This is not an inventorship dispute at all, much less one rising anywhere near the level of fraud—it is a written-description defense in poor disguise.

A continuation application, like the '707 application from which the '099 Patent issued, may claim the priority date of an earlier application.  35 U.S.C. § 120 (pre-AIA).  To do so, the earlier priority application must, among other things, "contain a written description of the invention" claimed in the continuation application.  35 U.S.C. § 112 ¶ 1 (pre-AIA).  This requirement is met if "the disclosure of the application . . . reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."  *Ariad Pharm. v. Eli Lilly*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  Amgen's argument that "there are *no* actual inventors of the '099 Patent claims" because "the '099 Patent's specification does

not support any claims to buffer-free aflibercept formulations," targets this requirement.  Opp. 13. In Amgen's view, the '099 Patent's specification—which is substantively identical to the specification of the 2006 priority application—does not convey that Regeneron's inventors possessed the formulations claimed in the '099 Patent.  Indeed, Amgen's Counterclaims contend "the claims of the '099 patent lack written description support."  *E.g.*, ECF 666, at 30, 122, 101.

At least one court has rejected a near-identical effort to graft an inequitable conduct challenge onto a written-description defense.  In *Impact Engine v. Google*, 2020 WL 3414627 (S.D. Cal. 2020), the defendant asserted an inequitable conduct defense as to six asserted patents. *Id.* at *1.  As here, the "crux" of that defense was an allegation that the patentee's prosecutors "submitted patent claims to the PTO knowing that the claims lacked written description."  *Id.* at *2.  As here, the defendant "ma[de] no allegations that the inventors or prosecuting attorney intentionally misled the patent examiner with false or misleading statements in the written description to obtain those claims."  *Id.*  As here, the "only disagreement" was presented by the challenger's view that "that the examiner . . . wrongly concluded that the requirements for § 112 were met when the claims were allowed."  *Id.*  And, as here, the challenger "cite[d] to no authority supporting this [written description] inequitable conduct theory."  *Id.*  This Court too should decline to "expand . . . inequitable conduct to embrace" this "novel theory."  *Id.*

Because Amgen's allegations relate to the written-description question rather than any true "inventorship" dispute, even the very limited authority to which it directs the Court is unavailing. The underlying question in each of Amgen's three cited cases was whether the named inventors were the sole individuals responsible for the work described in the asserted patents.  *See PerSeptive Biosystems v. Pharmacia Biotech*, 225 F.3d 1315, 1317-19 (Fed. Cir. 2000); *BLM Prods. v. Covves*, 2017 WL 8811269, at *3, *5 (C.D. Cal. Oct. 26, 2017); *Advanced Magnetic Closures v.*

*Rome Fastener*, 607 F.3d 817, 825, 828 (Fed. Cir. 2010).  In contrast, Amgen never contests that Regeneron's inventors are responsible for the work described in the '099 Patent's specification. Amgen's dispute is different—it contends that Regeneron's specification does not support the '099 Patent's claims.  But Amgen identifies no case finding inequitable conduct, or even allowing such a challenge to survive on the pleadings, where an alleged inventorship misrepresentation was based on such a written-description dispute rather than an actual inventorship question of whether the named inventor(s) were solely (or jointly) responsible for the work described.   Amgen's "inventorship" inequitable conduct challenge fails because it is *not* an inventorship challenge.

Accepting Amgen's novel argument would mean that in every case alleging lack of written description—a defense routinely advanced by defendants, including almost every defendant in this MDL—a potential inequitable conduct claim would follow.[1]  Such a result would fly in the face of the *Therasense*, which sought to rein in an overused "inequitable conduct doctrine [that] ha[d] plagued not only the courts but also the entire patent system."  649 F.3d at 1289.

### 2.    Amgen does not adequately plead a material misrepresentation.

Even if Amgen's "inventorship" theory were legally viable, Regeneron's identification of its inventors was neither a misrepresentation nor material.  *Exergen*, 575 F.3d at 1327 n.3.

### a.    There was no misrepresentation.

In listing Regeneron's scientists as the inventors of the '099 Patent, Regeneron's patent prosecutors advanced their position that (i) those inventors are responsible for the subject matter described in the '099 Patent's specification, and (ii) the specification supports the '099 Patent's

---

[1] Amgen should be keenly aware of the extraordinary implications of the sweeping, inequitable conduct theory it now promotes.  In recent years, Amgen accused a Regeneron and Sanofi medicine, Praluent (alirocumab), of infringing certain Amgen patents.  The Supreme Court affirmed the judgment of the Federal Circuit, finding that various claims of those Amgen patents lacked § 112 support.  *Amgen v. Sanofi*, 598 U.S. 594, 612-16 (2023).  To hear Amgen tell it now, those claims not only were invalid, but also would have been unenforceable for inequitable conduct on a supposed "inventorship" theory.

claims.  Amgen does not dispute the first point; it never has alleged that the '099 Patent inventors—the same four inventors listed in every application in this patent family—cannot claim credit for the work described in the specification shared by this patent family.  And while Amgen challenges the second point, Regeneron's position is not a "representation," much less a "*mis*representation"; it is quintessential *attorney argument* at the core of patent prosecution.  *See Schwendimann v. Arkwright Advanced Coating, Inc.*, 2011 WL 4007334, at *6 (D. Minn. Sept. 8, 2011); *Wilson Tool Int'l Inc. v. Mate Precision Tooling Inc.*, 2018 WL 6706326, at *11 (D. Minn. Apr. 19, 2018).

Amgen argues that "the 'attorney argument' defense applies only if the statements are 'not unreasonable or demonstrably false.'"  Opp. 16.  It then hastily concludes that, because it has alleged Regeneron's positions were "unreasonable and plainly false," and because the Court must resolve factual disputes in its favor at this stage, its claims must survive.  *Id.*  What Amgen ignores is that the Court need not "accept as true [Amgen's] unwarranted inferences, unreasonable conclusions or arguments."  *Nemet Chevrolet v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  But this is precisely what Amgen asks the Court to do—to blindly accept its conclusions and inferences of unreasonableness and falsity to transform protected attorney argument into a supposed misrepresentation justifying an inequitable conduct charge, the "atomic bomb" of patent litigation.[2]  *Therasense*, 649 F.3d at 1288-89.

Here, Regeneron's position that the '099 Patent's specification supports its claims is not only squarely within the attorney-argument safe harbor, it also is correct—and thus anything but "unreasonably and demonstrably false."  The patent examiner, who was tasked with making this

---

[2] Were Amgen's simplistic view of the law correct, courts *never* could dismiss inequitable conduct claims as based on attorney argument because, as Amgen would have it, inherent in any such claim is a dispute as to the reasonableness and accuracy of the argument.  Courts, however, do dismiss such claims at the pleadings stage.  *E.g.*, *Andritz Inc. v. Cortex N. Am. Corp.*, 2020 WL 4495267, at *5 (D. Or. Aug. 4, 2020); *Illumina, Inc. v. BGI Genomics Co.*, 2020 WL 571030, at *3 (N.D. Cal. Feb. 5, 2020).

very determination and had both the claims and specification before him, agreed with Regeneron and granted the '099 Patent.  Mot. 16.  And for good reason:  as the evidence in this case will show, the claims of the '099 Patent—which undisputably were not at issue in the prior preliminary-injunction proceedings before this Court or the Federal Circuit—are not limited to "buffer-free" formulations, and the specification amply supports the claimed genus of aflibercept formulations that may or may not include an additional buffering agent.  But the adequacy of the '099 Patent's written description is not properly determined in connection with the dismissal of Amgen's ill-conceived inequitable conduct theory; the proper time for adjudicating that question is at trial.  The present question is whether Amgen has pleaded that Regeneron's inventorship identification was a misrepresentation—which, as permissible attorney argument, it plainly cannot be.  Nor can Amgen's disagreement with that argument plausibly suggest that Regeneron committed fraud.

### b.    Any supposed misrepresentation was immaterial.

Even if Regeneron's inventorship position somehow constituted a misrepresentation rather than argument, it could not have been material.  Again, the only supposed representation that Amgen contends was false was the representation implicit in Regeneron's inventorship position that the work of its inventors disclosed in the specification provided written description support for its new claims.  But the examiner undisputably had before him all the information relevant to that inquiry, including both the claims and specification.  Thus, "he was free to reach his own conclusions and accept or reject [Regeneron's] arguments." *Young v. Lumenis, Inc.* 492 F.3d 1336, 1349 (Fed. Cir. 2007); *see also Schwendimann*, 2011 WL 4007334, at *6.  It is presumed that the examiner of the '099 Patent examined the claims for written-description support, *see* MPEP §§ 201.07, 211.05; *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939 (Fed. Cir. 1990), and Amgen did not attempt to plead otherwise.  Regeneron's statement that the inventors invented the '099 Patent claims—*i.e.*, that the specification supports the claims—cannot be material because,

irrespective of that statement, a reasonable examiner still would have come to his own conclusion that the specification supported the claims. *Schwendimann*, 2011 WL 4007334, at *6.

### B.    Amgen Inadequately Alleges Material Misrepresentation with Regard to the "No New Matter" Statement.

Amgen's "no new matter" inequitable conduct theory is an effort to dress up the same written-description challenge. The only changes made in the '099 Patent's application from the originally filed application in the chain were (i) to make ministerial edits to the specification (*e.g.*, updating references to related applications) and (ii) to insert the new proposed claims. Mot. 17. Regeneron's statement that "[n]o new matter enters by way of the present amendments" was simply an argument that (i) the minor changes to the specification were ministerial and (ii) the new claims were not adding "new matter" because they found written-description support in the specification of the originally filed application, a baseline requirement for such a continuation application. *See* MPEP §§ 201.07, 211.05. As a matter of law, that was attorney argument, not inequitable conduct. *Rothman v. Target Corp.*, 556 F.3d 1310, 1328-29 (Fed. Cir. 2009).

As before, Amgen tries to bootstrap its inequitable conduct position by asking the Court to accept as true Amgen's unwarranted inferences and unreasonable conclusions—but the law dictates otherwise. *Supra* Section I.A.2.a. Its factual allegations likewise come nowhere close to pleading any material misrepresentation. Most of its allegations concern the procedural steps of prosecuting the '707 application, none of which go to the accuracy of the "no new matter" statement. ECF 666 at 105-07, 111. And its allegations about the prior preliminary-injunction proceedings likewise are off-point; as noted above, those proceedings indisputably did not concern the '099 Patent—which had not even issued at the time.[3] *Id.* at 108-09. Accordingly, Amgen has

---

[3] Amgen bizarrely suggests Regeneron does not contest its "no new matter" statement was false. Opp. 16. Not so. Regeneron's protected attorney argument was, as the examiner found, also an accurate assessment of the specification's support for the claims. *See supra* Section I.A.2.

not plausibly pleaded that Regeneron's statements were "unreasonable or demonstrably false."

Even were Regeneron's "no new matter" argument a misrepresentation, it would not be material. "The statement that there is 'no new matter' contained in a patent amendment is no more material than a statement by a patentee that a patent is 'valid,'" and "[s]uch representations made by a patentee would not bear upon any reasonable patent examiner's evaluation of a patent application." *Neutrino Dev. Corp. v. Sonosite, Inc.*, 512 F. Supp. 2d 1004, 1009 n.14 (S.D. Tex. 2007); *see also Wilson Tool*, 2018 WL 6706326, at *11 ("no new matter" "statement was not material" because the examiner "had before him all material relevant to making an independent determination of new matter as he was required to do" (citation omitted)). Amgen has no answer for this authority. Nor is Amgen correct that "by Regeneron's logic, no inequitable conduct claim could stand because, in every case, the patent examiner has to first issue a patent for an inequitable conduct claim to be raised." Opp. 16. Inequitable conduct may be based on acts that are not argument—*e.g.*, intentionally withholding material disclosures from PTO review or deliberately concealing the identity of a co-inventor. But the law protects attorney argument.

### C. Amgen Inadequately Alleges Specific Intent To Deceive.

Even setting aside Amgen's failure to plead a material misrepresentation, its inequitable conduct allegations should be dismissed for the independent reason that Amgen fails to plead facts sufficient to support an inference that Regeneron's written description position was taken with the specific intent to deceive the Patent Office. Amgen gestures vaguely toward a "pattern" of conduct that purportedly demonstrates Regeneron's attempt to deceive the PTO. Opp. 17-18. Although courts may consider "multiple acts of misconduct '[i]n the aggregate'" when evaluating specific intent, Amgen fails to allege *any* act of misconduct, let alone a pattern. *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1098 (Fed. Cir. 2024). For example, the Federal Circuit has explained that "there is nothing improper, illegal or inequitable in filing a patent application for the purpose

9

of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988).  Nor is it improper to resubmit original inventor declarations in later-filed applications, as PTO procedures expressly authorize (and as Amgen also routinely does).  Mot. 14 & n.3.  The only other allegations lobbed by Amgen do not pass the sniff test—Amgen does not suggest Regeneron withheld material prior art, but instead argues that Regeneron should have submitted certain references earlier during prosecution, or perhaps in a different order, or perhaps grouped differently.  Opp. 18; *cf. Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) ("An applicant can not be guilty of inequitable conduct if the reference was cited to the examiner . . . .").

Amgen does not allege Regeneron's submission of references violated any PTO procedure or applicant duty, like the duty of candor, and it identifies no authority for the proposition that such minutiae can establish deceptive intent.  The "burying" cases on which Amgen relies are inapposite—Amgen has not alleged that Regeneron inundated the examiner with *irrelevant* information or that any of its submitted references should not have been included.  Amgen has not pleaded facts sufficient to support a "pattern of misconduct" that could suggest Regeneron acted with general deceptive intent, and it has not pleaded a single fact specific to the alleged misstatements in question.

## II.    The Court Should Dismiss Amgen's Antitrust Counterclaims (Counterclaims 6-7).

### A.    Amgen Fails to Allege Fraud as to the '099 Patent.

Amgen has not properly alleged any misrepresentation, only attorney argument (with which Amgen disagrees), and thus Amgen has not alleged that Regeneron committed any fraud on the Patent Office with respect to the '099 Patent.  And Amgen does not dispute that its *Walker*

*Process* antitrust law claims fail if it has not adequately alleged such fraud.[4]  Opp. 21 (quoting *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1307 (Fed. Cir. 2016)).  On that basis alone, Amgen's *Walker Process* claims as to the '099 Patent must fail.

**B.    Amgen's Antitrust Claims Based on the Twelve Other Patents Also Fail.**

**1.    Amgen's antitrust claims based on the twelve other patents should have been raised long ago in the 2024 Litigation.**

Amgen's antitrust counterclaims as to the twelve earlier asserted patents arise out of the very occurrences that are the subject matter of the 2024 Litigation, and so were required to have been raised there.  Mot. 19.  Amgen argues that the Supreme Court's decision in *Mercoid* created an exception to Rule 13(a) for "antitrust claim[s] arising from a patent infringement action," Opp. 21, despite having told another court in this circuit just the opposite.  Argall Ex. 6 (ECF 680-08) at 27-28.  Amgen had it right the first time.  Mot. 19 n.5.  The parties agree that the "Fourth Circuit has limited *Mercoid* to situations in which the allegedly anticompetitive conduct was not relevant to the prior patent litigation."  Argall Ex. 6 at 28.  Amgen's attempt to distance itself from its characterization of the scope of *Mercoid* is unexplained by anything other than it shifting from the role of antitrust defendant to antitrust claimant.  *Mercoid* did not somehow exempt all antitrust counterclaims from Rule 13(a).  To the contrary, as the Fourth Circuit has explained, *Mercoid* "has been read narrowly . . . and its continuing validity is open to serious question."  *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982), *cert. denied*, 461 U.S. 914 (1983).

---

[4] In arguing that "Regeneron misstates the law when it argues that the fraud standard for a *Walker Process* claim is more stringent than the fraud standard for an inequitable conduct claim" because the Federal Circuit has adopted a "but-for" inequitable conduct materiality standard in *Therasense*, Amgen itself misstates Regeneron's position.  Opp. 21.  Regeneron nowhere compared the materiality element of inequitable conduct with the requirements of *Walker Process* fraud.  It is, however, undisputed that *Walker Process* claimants do bear a "greater burden" in showing fraud for antitrust liability purposes to the extent they are required to demonstrate also that the patentee "has *knowingly* attempted to *enforce* a fraudulently obtained patent" (and, of course, such claimants also are responsible for proving the other elements of an antitrust claim).  *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1418 (Fed. Cir. 1987) (emphases added).

Knowing that the law within this circuit is clear, and unable to defend its about-face, Amgen pivots to cherry-picking decisions from the Fifth and Ninth Circuit, and conclusorily characterizing the Fourth Circuit's interpretation as "inapposite" here. Opp. 21-22, n.5. Amgen cannot avoid binding circuit precedent any more than it can avoid its prior characterizations of *Mercoid*.[5] To echo Amgen's own words, "[c]iting cases outside the Fourth Circuit, [Amgen] argues that *Mercoid* holds that antitrust counterclaims are never compulsory. But the Fourth Circuit rejected that interpretation of *Mercoid* in *Burlington*." Song Ex. 1 at 18.

Amgen footnotes an argument that the presence of a licensing agreement was dispositive in *Burlington*'s application of Rule 13(a). Opp. 22 n.5. That is incorrect. *Burlington* noted the presence of a licensing agreement in finding that the two cases shared subject matter (an element of Rule 13(a) that is undisputed here); nowhere did it announce a new reading of Rule 13(a) under which it would apply only in the event of a license. Nor would such a rule make sense. To quote the portion of *Burlington* also quoted by Amgen, that was "a case in which the 'antitrust claims . . . *arose out of the very transaction which was the subject matter of [the previous] complaint*.'" Opp. 22 n.5 (emphasis added). So too do Amgen's antitrust claims here.

Finally, Amgen suggests that it might "amend" its pleadings in the 2024 Litigation to assert these counterclaims there. Opp. 22. Amgen has never requested leave for such a stunt, and were it to do so, there would be clear reasons to deny the request. The damages Amgen claims to have suffered are attorneys' fees litigating the twelve patents in that case, including after Amgen answered without ever asserting any such counterclaim; the prejudice to Regeneron from permitting Amgen to assert such a claim to fees only after causing them to be incurred is plain.

---

[5] The Fifth and Ninth Circuits diverged from other courts, but even in so doing, they recognized the Fourth Circuit has "limit[ed] the holding of [*Mercoid*] specifically to cases involving the identical facts presented in *Mercoid*." *Tank Insulation Int'l., Inc, v. Insultherm, Inc.*, 104 F.3d 83, 88 (5th Cir. 1997).

### 2. Amgen's antitrust claims based on the twelve other patents fail to allege an antitrust injury caused by Regeneron.

Self-inflicted harm invites no remedy. Amgen concedes that, pursuant to the BPCIA's statutory scheme, it "had substantial control over the patents that would be the subject of the first-wave litigation," and that it "*chose* to take on these patents." Opp. 23 (emphasis added). Amgen's sole justification for imposing on Regeneron, in the form of treble antitrust damages, the cost of litigating patents that Amgen itself "chose to take on" is Amgen's speculation that it was going to "face a lawsuit from Regeneron with respect to these patents at some point" and its desire to "more quickly remove uncertainty." *Id.* Whatever that means, it is not a cognizable antitrust claim.

The purported injury Amgen suffered in litigating those twelve patents was self-inflicted, and Amgen cites no authority to permit it to recover damages in antitrust on that basis. To the contrary, "'[t]he man who is the author of his own hurt has no right to complain.'" *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 972 F. Supp. 2d 748, 768 (D. Md. 2013), *aff'd*, 777 F.3d 712 (4th Cir. 2015) (quoting The Principal Maxims of the Law, in *Leading Cases Simplified* (1882)); *see id.* ("[O]ne who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it.") (quoting Restatement (Second) of Torts § 892A (1979)); *cf. Burlington*, 690 F.2d at 391 ("From the earliest days of the Sherman Act, courts have treated antitrust violations as akin to torts . . . ."). Courts are especially skeptical in cases where the only alleged injuries are self-inflicted litigation costs. *See AirFacts, Inc. v. Amezaga*, 30 F.4th 359, 365 (4th Cir. 2022) (affirming rejection of a claim for material breach, where "[t]he only injuries the company alleges are the legal fees and forensic costs incurred in this litigation"). Amgen certainly identifies no court ever to have allowed an antitrust claim because fees were expended by the antitrust plaintiff out of a voluntary preference for a "more quick" resolution of hypothetical disputes with a patentee. This Court should not be the first.

**III.    The Court Should Dismiss and Strike Amgen's Counterclaims and Defenses Based on California's UCL, Patent Misuse, Laches, and Unclean Hands.**

Amgen's cursory response offers no persuasive opposition to Regeneron's arguments for striking and dismissing these counterclaims and defenses.

*UCL:* Amgen's UCL counterclaim (Counterclaim 8) fails for the same reason as its Sherman Act counterclaim.  Amgen cites *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 100-01 (9th Cir. 2023), but the Ninth Circuit in that case simply clarified that a UCL "unfair" claim may proceed where a federal antitrust claim fails due to the latter's "*proof deficiency*."  *Id.* at 1001. Here, Amgen's Sherman Act claim fails at this stage *as a matter of law*, not because of a "proof deficiency." And because Amgen's UCL counterclaim is *purely derivative* of an alleged Sherman Act violation, the claims rise and fall together.  *See, e.g.*, *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 923 (N.D. Cal. 2019); *Reilly v. Apple Inc.*, 578 F.Supp.3d 1098, 1111 (N.D. Cal. 2022).

*Patent Misuse:*    Regeneron nowhere suggested that patent misuse is limited to tying arrangement and post-expiration royalties (Opp. 24); those are simply "classic examples" of patent misuse claims.  Mot. 23. And the two decisions Amgen cites for a broader scope to such a claim/defense are inapposite.  *CMC Materials, LLC v. DuPont de Nemours, Inc.*, No. 20-738, Dkt. 218 at 19 (D. Del. Nov. 21, 2023) (Song Ex. 2) cites back—with no meaningful discussion—to the only other decision relied upon by Amgen, *Bayer CropScience AG v. Dow AgroSciences LLC*, 2011 WL 6934557 (D. Del. Dec. 30, 2011).  *Bayer*, in turn cited only to *In re Gabapentin Pat. Litig.*, 649 F. Supp. 2d 340 (D.N.J. 2009) for the proposition that a patent misuse claim lies if the patentee "was enforcing a patent it knew was invalid, unenforceable, and/or not infringed." *Bayer*, 2011 WL 6934557, at *4.  A sister opinion to *Gabapentin* that issued the same day, however, made clear that the *Gabapentin* patent misuse defenses and counterclaims survived *not* because of any assertion the patentee knew the claims were "invalid, unenforceable, and/or not infringed," but

14

because the patentee had been accused of manipulating the issuance date of the patent so as to extend its term. *See In re Gabapentin Pat. Litig.*, 648 F. Supp. 2d 641, 652-53 (D.N.J. 2009). No such allegation is made here, and indeed, it would be impossible for Amgen to so allege under the current system in which patent term is no longer measured from the date of issuance. Mot. 24-25.

*Laches:* A laches defense is inapplicable to the '099 Patent because its expiry is tied to its priority application filing date rather than to its issuance date. Mot. 24-25. Amgen's only response is that laches applies because Amgen purportedly alleges an "egregious misuse of the statutory patent system." Opp. 25. Amgen does not point to any precedent supporting such an exception for a laches defense, let alone refute the cited cases that compel striking this defense. *Id.*

*Unclean Hands:* Amgen argues that its Answer "in total" makes a claim for an unclean hands defense. Opp. 25. Breadth does not make up for lack of substance on this point: Amgen's only relevant allegation is its conclusory declaration that "Regeneron's claim of patent infringement is barred in whole or in part by the equitable doctrines of waiver, estoppel, and/or unclean hands." ECF 666 at 9. As set forth in caselaw that Amgen does not bother to address, such declarations are insufficient to ground such defenses. *See Tippman Eng'g, LLC v. Innovative Refrigeration Sys., Inc.*, 2020 WL 1644985, at *3 (W.D. Va. Apr. 2, 2020).

## CONCLUSION

For the reasons set forth above, Regeneron respectfully requests that the Court enter its proposed order (ECF 680-09) striking Amgen's Fourth, Eleventh, Thirteenth, and Fourteenth Defenses and dismissing Amgen's Third, Fourth, Fifth, Sixth, Seventh, and Eighth Counterclaims.

Date: February 11, 2026

*Of Counsel*:

David I. Berl (admitted *PHV*)
Ellen E. Oberwetter (admitted *PHV*)
Thomas S. Fletcher (admitted *PHV*)
Andrew V. Trask (admitted *PHV*)
Teagan J. Gregory (admitted *PHV*)
Shaun P. Mahaffy (admitted *PHV*)
Kathryn S. Kayali (admitted *PHV*)
Arthur J. Argall III (admitted *PHV*)
Adam Pan (admitted *PHV*)
Jennalee Beazley (admitted *PHV*)
Rhochelle Krawetz (admitted *PHV*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
dberl@wc.com
eoberwetter@wc.com
tfletcher@wc.com
atrask@wc.com
tgregory@wc.com
smahaffy@wc.com
kkayali@wc.com
aargall@wc.com
apan@wc.com
jbeazley@wc.com
rkrawetz@wc.com

*Attorneys for Plaintiff Regeneron Pharmaceuticals, Inc.*

CAREY DOUGLAS KESSLER & RUBY, PLLC

*/s/ David R. Pogue*
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
707 Virginia Street East
901 Chase Tower (25301)
P.O. Box 913
Charleston, West Virginia 25323
(304) 345-1234
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rfranks@cdkrlaw.com

*Attorneys for Plaintiff Regeneron Pharmaceuticals, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2026, I electronically filed the foregoing using the Court's CM/ECF service.  Counsel of record for all parties will be served by the Court's CM/ECF service.

*/s/ David R. Pogue*
David R. Pogue