# EXHIBIT 6

ROTHWELL FIGG

901 New York Avenue, N.W.
Suite 900 East
Washington, DC 20001

Telephone (202) 783-6040
Facsimile (202) 783-6031
www.rothwellfigg.com
info@rothwellfigg.com

Offices in Washington, D.C. | Boston

G. Franklin Rothwell (1928-2011)
Harry F. Manbeck, Jr. (1926-2025)

E. Anthony Figg
Steven Lieberman
Joseph A. Hynds
Martin M. Zoltick
R. Danny Huntington
Joo Mee Kim
Brian S. Rosenbloom
Jennifer P. Nock
Brett A. Postal
Aydin H. Harston, Ph.D.
Jennifer B. Maisel
Richard Wydeven
Sharon L. Davis
Robert P. Parker
Jenny L. Colgate
Leo M. Loughlin
Michael V. Battaglia
Michael H. Jones
Rachel M. Echols

*Not a member of the D.C. Bar. Practice limited to patent, trademark and copyright matters and cases in federal courts.

Daniel L. Shores
Mark T. Rawls
Nicole M. DeAbrantes
Davide F. Schiavetti
Vivian Y. Tian
Kristen J. Logan
Sheena X. Wang
Gary J. Prato
Bryan B. Thompson
Andrew C. Stewart
Adam M. Nicolais
Gregory S. DeLassus
Michael P. Ellenberger
Mary L. Mullins
Stephanie E. Waltersdorff
Rolando F. Rengifo, Ph.D.
Benjamin H. Fishman
Jotham Koneri
Delon Lier*

Of Counsel
Alexandra S. Hughes
Hugham Chan

August 5, 2026

**VIA EMAIL**

Adam Pan, Esq.
Williams & Connolly LLP
680 Maine Avenue S.W.
Washington, DC 20024

Re: *In re: Aflibercept Patent Litigation – No. 1:24-md-3103-TSK*

Counsel,

Your objections to Amgen's supplemental disclosure are baseless. Amgen will not be withdrawing these disclosures.

*First*, your email plainly exaggerates the scope of Amgen's supplemental disclosure. Amgen did not disclose "potentially thousands of documents" in its supplemental disclosure. Amgen identified five (5) specific documents from foreign proceedings of which it is currently aware that relate to the claim term at issue. That Amgen is unable to definitively rule out other materials at this time and therefore included a reservation of rights is because Regeneron has improperly refused to produce or provide access to legal proceedings involving foreign counterparts of Regeneron's patents-in-suit, as discussed below. Amgen further identified eight (8) documents from PTAB proceedings in response to Regeneron's selective identification of other documents from those same proceedings.

*Second*, your complaint that Regeneron does not have access to some of the materials in Amgen's supplemental disclosure is frivolous. Regeneron has access to these materials because they all ***come from other aflibercept-related patent proceedings involving Regeneron***, and which involve family members and counterparts of the Furfine patents. Indeed, the materials cited by Amgen include or reflect ***statements made by Regeneron and its representatives, in other legal proceedings***, concerning how a person of ordinary skill would interpret the term "suitable for intravitreal administration"—the exact question at issue here. These documents

represent admissions by Regeneron that Amgen would be entitled to rely upon even if they were not included its disclosure of "intrinsic and extrinsic evidence" supporting claim construction.

Regardless, to be clear, Amgen intends to argue that Regeneron now seeks a construction of the term—i.e., that it does not impose any functional limitations—that is plainly inconsistent with the position that Regeneron adopted for this term in other jurisdictions. It is exactly for this reason, among others, that Amgen has been seeking production of these materials since October of last year. But because Regeneron has refused, Amgen was forced to move to compel these documents (Dkt. 738, 773). We can only presume that Regeneron likewise understands these materials are harmful to its present case, which is why Regeneron has refused to produce these materials and is now so strenuously objecting to their use.

*Third*, Regeneron's attempt to claim prejudice is just as baseless. The materials cited include ***statements and admissions made by Regeneron's counsel or its experts in legal proceedings involving aflibercept***, and court documents that reflect the same. Your claim that Regeneron would be surprised or prejudiced by Amgen's use of these materials is absurd.

Moreover, Amgen supplemented its disclosure of evidence just 3 business days after the parties' original exchange, and before the filing of the Joint Claim Construction Chart. Regeneron has ample time to address these materials in its opening submission, if it so chooses, or to do so in its responding claim construction brief.

Your other complaint that Regeneron was unable to identify and rely on a technical expert to address these materials makes no sense. The parties' stipulation required each party to disclose that they "may rely on an expert declaration" on July 30, as part of its *initial* identification of intrinsic and extrinsic evidence. That decision was required *before* receiving the other party's identification of evidence, which was simultaneously exchanged on July 30. In other words, Regeneron had to decide whether it would rely on any technical experts before having the benefit of Amgen's supporting evidence. Had Amgen identified this material in its July 30 exchange, that would not change that Regeneron already decided not to rely on any technical experts for this term in claim construction. That Regeneron would now complain about this is especially off-base because this was a step-wise procedure that Regeneron itself insisted on and proposed to Amgen.

*Fourth*, the timing of Amgen's disclosures directly relates to Regeneron's own shifting-sands approach to construction of this term. As detailed in our letter dated August 5, 2026 Regeneron has shifted its position on this term on multiple occasions. *See* B. Postal Letter dated August 5, 2026. On July 22, Regeneron originally proposed that the term carry a plain and ordinary meaning, which apparently involved exchanging the word "suitable" for "acceptable." However, on July 28, Regeneron sent an alleged "compromise" claim construction that suggested, for the first time, that Regeneron believes that the term "does not impose functional requirements such as stability." Regeneron appeared to later walk that position back. Only after further discussions and correspondence between the parties has it become clear that Regeneron's

"compromise" construction is not a compromise at all, but rather the actual construction that Regeneron intends to argue for the term. *See id*. That being the case, Amgen intends to demonstrate why that newly-proposed construction is at odds with the position that Regeneron has adopted in other jurisdictions, as shown in the supplemental materials.

You complain that Amgen is attempting to hide the ball by "dumping thousands of documents on Regeneron at the eleventh hour"; nothing could be further from the case. The relevance of the materials cited by Amgen is no doubt as clear to Regeneron as it is to Amgen. And the fact is that Regeneron's own disclosure of intrinsic and extrinsic evidence did not cite to specific portions of the lengthy documents that were identified. Indeed, Regeneron appears to have cited documents that Amgen still does not have access to, including "Trial Testimony" of Gregory MacMichael and Bernhardt Trout, much of which was under seal. We will follow up on this issue separately.

Regardless, to advance the issues, Amgen identifies below specific exemplary portions of the supplemental materials on which it intends to rely, including, in some instances, specific exemplary statements:

- Regeneron and Bayer's Trial Skeleton Argument dated June 29, 2025 (England and Wales High Court) at, e.g., ¶¶ 3, 11, 75, 92, 102 ("In respect of **suitability for intravitreal administration**, Prof Gukasyan [Regeneron's Expert] explains that the Formulation Scientist would understand that a formulation would be suitable for intravitreal administration if it has an osmolality close to or within the range of the vitreous, has a pH that is tolerated in the eye, and is non-viscous enough to be capable of being injected (Gukasyan 1 §§6.33- 6.35).") (original emphasis), 341;
- [2025] EWHC (Pat) 2527 (Judgment dated October 8, 2025) at ¶¶ 103, 109-113, 146
- Federal Patent Court [FPC] S2025_003 (Switz.), Judgment dated July 17, 2026 at, e.g., ¶¶ 44, 47, 60 (citing statement from Regeneron's expert report that "There is a particularly strong need for lower viscosity in intravitreal administration given the use of a thin injection needle.")
- *Regeneron Pharms., Inc. v. Amgen Canada Inc.*, No. T-2137-23, Responding Validity Report of Dr. Douglas Kline (Fed. Ct. CA Apr. 10, 2025) at, e.g., ¶ 20 ("Intravitreal administration also presents its own unique challenges. … [H]igher viscosity can present a problem because needles used for intravitreal injections have a small gauge as compared to, for example, needles used for intravenous administration. A viscous solution may have difficulty being pushed through a small gauge needle and can create added stress on the protein and lead to stability problems."), ¶¶105-106, 116-117, 183-184;
- *Regeneron Pharms., Inc. v. Amgen Canada Inc.*, No. T-2137-23, Trial Volume 2 (Fed. Ct. CA May 28, 2025) (Kline Trial Tr.) at, e.g., 290-293, 314-315.

- *Fresenius Kabi SwissBioSim GmbH v. Regeneron Pharmaceuticals, Inc.*, IPR2025-01268-08 (Patent Owner's Preliminary Response) (P.T.A.B. Oct. 23, 2025) at, e.g., 13, 35-40.

*Finally*, your complaint that Amgen is using Canadian discovery in a sword-and-shield manner misapprehends the relevant facts. We identified the publicly available trial transcripts from the Canadian litigation and the report of Regeneron's own expert from that litigation, which is not marked confidential. Unlike the Canadian litigation documents involving cell line testing (which we assume are what your email references), the documents cited in our supplemental disclosure are not confidential under the Canadian protective order.

Best regards,

*/Jennifer P. Nock/*

Jennifer P. Nock