# EXHIBIT 7

**From:** Jennifer Nock
**To:** Kayali, Kathryn; Gladden-Sorensen, Christian; Pan, Adam; Eylea; drpogue@cdkrlaw.com; sruby@cdkrlaw.com; regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; Berl, David
**Cc:** ABP938; MGB-Amgen-ABP938; AmgenLitigation@cravath.com; Kaitlyn McKitrick; Stuart McMillan; Mary Anne Sturba; John R. Labbe
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen"s Identification of Evidence Regarding Claim Construction
**Date:** Thursday, August 6, 2026 6:01:03 PM
**Attachments:** Joint Claim Construction and Prehearing Statement - August 6 2026.docx

---

Counsel,

We understand from Regeneron's filing that it agrees to "promptly submit a Joint filing" to replace its unilateral filing submitted last night. Amgen's proposed joint filing is attached, showing our revisions in redline. As suggested, we included a proposed Prehearing Statement on the conduct of the hearing. Please confirm that Regeneron will promptly file a clean copy of the attached JCCS, or that you will send us any further edits before filing so that the joint filing can be completed by midday tomorrow.

The record speaks for itself but to be clear, it was unreasonable for Regeneron to insist on including a lengthy argumentative position statement in the Joint Claim Construction and Prehearing Statement, which should simply set forth the parties' agreed constructions and proposed constructions for disputed terms. It was particularly unreasonable for Regeneron to reveal its intent to do so only after the close of business on the due date for the submission. Even though Regeneron did not send the initial draft until after business hours, Amgen responded to make clear that the parties should work together to file a joint statement and made a proposal to do the same in an orderly fashion. Instead of responding to Amgen's proposal, Regeneron unilaterally filed at midnight what was supposed to be a joint statement.

On the merits, Regeneron set forth yet another new construction for the disputed term yesterday. Amgen has revised its proposed construction to present the apparent disagreement between the parties over what is the "plain and ordinary meaning" of "suitable for intravitreal administration." As we have repeatedly stated, and contrary to your email, Amgen is not "incorporating" specific properties into its claim construction. Rather, we have cited Regeneron's own statements to illustrate that Regeneron has recognized that the formulation must have features that a skilled artisan would understand are required for a formulation to be appropriate for intravitreal administration.

Finally, we note that your claim that Amgen "disclosed new evidence" yesterday afternoon is incorrect. Amgen's letter yesterday included pinpoint citations to documents that were *already specifically cited* in its August 4th Supplemental disclosure. Moreover, those citations are consistent with information included in Amgen's pincited evidence in its July

30 disclosures. ***See, e.g.***, Amgen's Disclosure of Intrinsic and Extrinsic Evidence (July 30, 2026) at 3-4 (providing pinpoint citations to the Trial testimony of Kenneth S. Graham, PhD; Eric Furfine, PhD; and Bernard Trout, PhD in *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, No. 22-cv-61-TSK).

Thanks,

Jennifer P. Nock
Rothwell, Figg, Ernst & Manbeck. P.C.
901 New York Avenue NW, Suite 900 East
Washington, DC 20001
Main: (202) 783-6040
Direct Dial: (202) 772-5661

The information contained in this communication is confidential, may be subject to attorney-client and/or work product privilege, and/or is intended only for the use of the addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify Rothwell, Figg, Ernst & Manbeck, P.C. at (202) 783-6040.

---

**From:** Kayali, Kathryn <KKayali@wc.com>
**Sent:** Thursday, August 6, 2026 12:41 AM
**To:** Jennifer Nock <jnock@rothwellfigg.com>; Gladden-Sorensen, Christian <CGladdenSorensen@wc.com>; Pan, Adam <apan@wc.com>; Eylea <Eylea@wc.com>; drpogue@cdkrlaw.com; sruby@cdkrlaw.com; regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; Berl, David <DBerl@wc.com>
**Cc:** ABP938 <ABP938@rothwellfigg.com>; MGB-Amgen-ABP938 <MGB-Amgen-ABP938@marshallip.com>; AmgenLitigation@cravath.com; Kaitlyn McKitrick <kmckitrick@bowlesrice.com>; Stuart McMillan <smcmillan@bowlesrice.com>; Mary Anne Sturba <msturba@bowlesrice.com>; John R. Labbe <jlabbe@marshallip.com>
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen's Identification of Evidence Regarding Claim Construction

Counsel:

The parties have been operating for weeks under a Court-ordered deadline to complete a filing on August 5, 2026. Amgen's proposal at 11:03 PM to extend that deadline for two days was unreasonable—Regeneron did not agree to Amgen's terms and Amgen left no time to continue negotiating them without flouting the Court's Scheduling Order (ECF 663) and Order Regarding Claim Construction Schedule (ECF 924). Accordingly, in order to comply with the Court's Orders to the best of its ability, Regeneron filed a Claim Construction Statement that (1) accurately reflects that it is not a "Joint" statement, and (2) represents in good faith Regeneron's understanding of which portions of the document are acceptable to both parties and which are

not. The as-filed statement incorporates Amgen's redlines provided at 8:05 PM other than the deletion of "Regeneron's Position."

As reflected in the as-filed Statement, we welcome further discussion of the issues and the potential to reach agreement. But for the avoidance of any doubt—Regeneron's need to include a position statement and the timing of the JCCS draft circulation are problems entirely of Amgen's own making. Amgen's utter disregard for the Court's deadlines, the parties' agreements, and its obligation to meaningfully confer are the direct cause of any timing issues. Regeneron circulated a JCCS draft *three hours* after Amgen disclosed new evidence and *for the first time* suggested its construction was intended to incorporate osmolality, pH, and viscosity requirements that appear nowhere within its proposal. Regeneron had been asking Amgen to explain its position for weeks. Amgen chose to provide no meaningful information until 2:06PM the day of filing, ten hours before the JCCS was due. Regeneron was surprised by Amgen's belatedly disclosed position and evidence; Amgen had no reason to be surprised by Regeneron's response. Regardless, even had Amgen truly not anticipated the need to prepare a counterstatement, it had ample time to do so before the filing deadline.

Please let us know when Amgen is available to continue discussions.

Best,

Kat

**Kathryn S. Kayali**
**Williams & Connolly LLP**
680 Maine Avenue S.W., Washington, DC 20024
(P) 202-434-5644 | (F) 202-434-5029
kkayali@wc.com | www.wc.com

---

**From:** Jennifer Nock <jnock@rothwellfigg.com>
**Sent:** Wednesday, August 5, 2026 11:03 PM
**To:** Gladden-Sorensen, Christian <CGladdenSorensen@wc.com>; Pan, Adam <apan@wc.com>; Eylea <Eylea@wc.com>; drpogue@cdkrlaw.com; sruby@cdkrlaw.com; regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; Berl, David <DBerl@wc.com>
**Cc:** ABP938 <ABP938@rothwellfigg.com>; MGB-Amgen-ABP938 <MGB-Amgen-ABP938@marshallip.com>; AmgenLitigation@cravath.com; Kaitlyn McKitrick <kmckitrick@bowlesrice.com>; Stuart McMillan <smcmillan@bowlesrice.com>; Mary Anne Sturba <msturba@bowlesrice.com>; John R. Labbe <jlabbe@marshallip.com>
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen's Identification of Evidence Regarding Claim Construction

Counsel,

We disagree with your characterizations and maintain that argumentative statements are not necessary for a Joint Claim Construction Statement.

In view of the fact that Regeneron did not provide a draft of the JCCS to Amgen until after close of business on the day that it was due, and included an unexpected position statement when it did so, we will provide Amgen's responsive statement by tomorrow afternoon. We would propose that the parties file the Joint Claim Construction Statement by Friday at noon.

We also think the JCCS should include a Prehearing Statement regarding the conduct of the hearing, which neither party has provided thus far. We will provide a proposed statement for this section.

Thanks,

Jennifer P. Nock
Rothwell, Figg, Ernst & Manbeck. P.C.
901 New York Avenue NW, Suite 900 East
Washington, DC 20001
Main: (202) 783-6040
Direct Dial: (202) 772-5661

The information contained in this communication is confidential, may be subject to attorney-client and/or work product privilege, and/or is intended only for the use of the addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify Rothwell, Figg, Ernst & Manbeck, P.C. at (202) 783-6040.

---

**From:** Gladden-Sorensen, Christian <CGladdenSorensen@wc.com>
**Sent:** Wednesday, August 5, 2026 9:20 PM
**To:** Jennifer Nock <jnock@rothwellfigg.com>; Pan, Adam <apan@wc.com>; Eylea <Eylea@wc.com>; drpogue@cdkrlaw.com; sruby@cdkrlaw.com; regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; Berl, David <DBerl@wc.com>
**Cc:** ABP938 <ABP938@rothwellfigg.com>; MGB-Amgen-ABP938 <MGB-Amgen-ABP938@marshallip.com>; AmgenLitigation@cravath.com; Kaitlyn McKitrick <kmckitrick@bowlesrice.com>; Stuart McMillan <smcmillan@bowlesrice.com>; Mary Anne Sturba <msturba@bowlesrice.com>; John R. Labbe <jlabbe@marshallip.com>
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen's Identification of Evidence Regarding Claim Construction

Counsel:

Regeneron's position statement was necessitated by Amgen's egregious conduct, and the timing of our circulation of the draft JCCS was a direct result of Amgen's belated disclosures. Indeed, we circulated the draft JCCS barely three hours after Amgen disclosed its new evidence and information about its new position at 2:06 PM today. Regeneron does not intend to remove the language Amgen has deleted and does not consent to filing the JCCS without it. Regeneron did not adjust Amgen's portion of the submission by deleting its improperly disclosed evidence; there is no basis for Amgen to remove Regeneron's accurate recitation of Amgen's conduct and its effect on subsequent briefing. If Amgen wishes to add its own statement, please provide it. If not, please confirm we have authority to file.

Best,

**Christian J. Gladden-Sorensen**
**Associate | Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5736 | cgladdensorensen@wc.com | www.wc.com
*he, him, his*

---

**From:** Jennifer Nock <jnock@rothwellfigg.com>
**Sent:** Wednesday, August 5, 2026 8:04 PM
**To:** Gladden-Sorensen, Christian <CGladdenSorensen@wc.com>; Pan, Adam <apan@wc.com>; Eylea <Eylea@wc.com>; drpogue@cdkrlaw.com; sruby@cdkrlaw.com; regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; Berl, David <DBerl@wc.com>
**Cc:** ABP938 <ABP938@rothwellfigg.com>; MGB-Amgen-ABP938 <MGB-Amgen-ABP938@marshallip.com>; AmgenLitigation@cravath.com; Kaitlyn McKitrick <kmckitrick@bowlesrice.com>; Stuart McMillan <smcmillan@bowlesrice.com>; Mary Anne Sturba <msturba@bowlesrice.com>; John R. Labbe <jlabbe@marshallip.com>
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen's Identification of Evidence Regarding Claim Construction

Counsel,

You provided the Joint Claim Construction chart after business hours (at 5:13 pm ET), on the evening the filing is due. With it, you included a multi-page, extensive argument with the draft—that is inappropriate and Amgen does not consent to a submission containing such argument.

We have removed the argumentative section. We also removed the discussion of claims of the Lawrence patents that are no longer in dispute. We do not object to the inclusion of a Regeneron footnote purporting to reserve Regeneron's objections to Amgen's supplemental identification of evidence. We have included an Amgen footnote that disagrees with the substance of Regeneron's footnote. With these changes, we can agree to file the JCCS tonight.

Thanks,

Jennifer P. Nock
Rothwell, Figg, Ernst & Manbeck. P.C.
901 New York Avenue NW, Suite 900 East
Washington, DC 20001
Main: (202) 783-6040
Direct Dial: (202) 772-5661

The information contained in this communication is confidential, may be subject to attorney-client and/or work product privilege, and/or is intended only for the use of the addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify Rothwell, Figg, Ernst & Manbeck, P.C. at (202) 783-6040.

---

**From:** Gladden-Sorensen, Christian <CGladdenSorensen@wc.com>
**Sent:** Wednesday, August 5, 2026 5:13 PM
**To:** Pan, Adam <apan@wc.com>; Jennifer Nock <jnock@rothwellfigg.com>; Eylea <Eylea@wc.com>; drpogue@cdkrlaw.com; sruby@cdkrlaw.com; regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; Berl, David <DBerl@wc.com>
**Cc:** ABP938 <ABP938@rothwellfigg.com>; MGB-Amgen-ABP938 <MGB-Amgen-ABP938@marshallip.com>; AmgenLitigation@cravath.com; Kaitlyn McKitrick <kmckitrick@bowlesrice.com>; Stuart McMillan <smcmillan@bowlesrice.com>; Mary Anne Sturba <msturba@bowlesrice.com>; John R. Labbe <jlabbe@marshallip.com>
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen's Identification of Evidence Regarding Claim Construction

Counsel:

Pursuant to the below, a draft Joint Claim Construction Statement is attached.

Thank you,

**Christian J. Gladden-Sorensen**

**Associate | Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
202-434-5736 | cgladdensorensen@wc.com | www.wc.com
*he, him, his*

---

**From:** Pan, Adam <apan@wc.com>
**Sent:** Wednesday, August 5, 2026 3:55 PM
**To:** Jennifer Nock <jnock@rothwellfigg.com>; Eylea <Eylea@wc.com>; drpogue@cdkrlaw.com; sruby@cdkrlaw.com; regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; Berl, David <DBerl@wc.com>
**Cc:** ABP938 <ABP938@rothwellfigg.com>; MGB-Amgen-ABP938 <MGB-Amgen-ABP938@marshallip.com>; AmgenLitigation@cravath.com; Kaitlyn McKitrick <kmckitrick@bowlesrice.com>; Stuart McMillan <smcmillan@bowlesrice.com>; Mary Anne Sturba <msturba@bowlesrice.com>; John R. Labbe <jlabbe@marshallip.com>
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen's Identification of Evidence Regarding Claim Construction

Counsel:

At 5:55 p.m. yesterday, five minutes before close of business on the day before the parties were due to file the Joint Claim Construction Statement (JCCS), Amgen belatedly disclosed its intention to rely on potentially thousands of unspecified documents from seven different proceedings. Amgen cannot excuse its complete disregard for the parties' negotiated, stipulated, and so-ordered deadlines for the exchange of evidence. (ECF No. 924.) Amgen has been aware of these proceedings for more than a year and itself was a party to one such proceeding. Despite being a week late, Amgen's belated disclosure ***still*** did not identify the specific evidence on which it intended to rely. It disclosed that material for the first time ***today***, at 2 p.m. the same day the JCCS is due. Amgen's suggestion that it was unable to identify these materials sooner is unfounded.

Today at 2 p.m. also is the ***first time*** Amgen disclosed its apparent intention to argue that "suitable for intravitreal administration" contains osmolality, pH, and viscosity requirements. If that indeed is what Amgen intends to do, its proposed construction conveys nothing of the sort. Amgen's statement that it "intends to argue that Regeneron now seeks a construction of the term—i.e., that it does not impose any functional limitations—that is plainly inconsistent with the position that Regeneron adopted for this term in other jurisdictions" likewise is unilluminating. That statement does not set forth what Amgen believes "suitable for intravitreal administration" requires. Regeneron has been asking for weeks what additional features Amgen contends are required for a formulation to be "suitable for intravitreal administration" within the meaning of Amgen's proposed construction. Indeed, Regeneron posed these questions to Amgen in writing on August 3. *See* Letter from D. Berl to J. Labbé (August 3, 2026). In particular, we asked:

- "...What requirements, if any, does Amgen assert that the term "suitable for intravitreal

administration" requires?"

- "What functional requirements, if any, that are expressly referenced in the specification of the '099 patent does Amgen contend this term requires?"
- "What functional requirements, if any, that are not expressly referenced in the specification of the '099 patent does Amgen contend this term requires?"
- "Does Amgen contend the term requires any analytical testing to determine whether it is met? If so, which test(s)?"
- "Does Amgen contend the term requires an excipient buffer?"

Amgen refused to respond to these questions on our subsequent conferral, and Amgen's letter of 11 a.m. today, which purports to respond in writing, conspicuously omits any answer. Amgen disparaged Regeneron's questions as hypotheticals, but they plainly were not hypothetical—Amgen evidently had considered its position on these issues but declined to reveal any part of it until the day of the JCCS filing. Amgen's strategic flouting of the agreed-upon process for disclosure of constructions and evidence has prejudiced Regeneron's ability to respond. It likewise will prejudice the Court's ability to resolve any dispute because the parties' briefs cannot join issue with respect to a disagreement the contours of which Amgen is changing by the moment and that Regeneron still does not understand. If Amgen wishes to propose a construction that encapsulates its true proposal (i.e., identifies what characteristics make a formulation suitable for intravitreal administration), Regeneron is happy to consider it. Regeneron's statements in other proceedings are not inconsistent with its position here.

Your letters of 11 a.m. and 2 p.m. today both incorrectly suggest that Regeneron has somehow changed its position during the course of the parties' exchanges because it at one point offered a "compromise" construction. That is incorrect. Regeneron ***at all times*** has sought to convey that the claim term should be interpreted according to its plain and ordinary meaning. It was ***Amgen*** that proposed the term for construction, and thus Regeneron was forced to propose a responsive construction and to guess at what Amgen's construction was intended to convey. After conferral with Amgen, Regeneron believed there was an opportunity to reach compromise by offering a construction that was still intended to reflect the plain and ordinary meaning of the term, but—as compromise often demands—more explicitly address the issues that appeared to be of concern to both parties. If that proposed compromise had the effect of crystalizing a dispute Amgen had otherwise sought to conceal, the fault does not lie with Regeneron. For the avoidance of any doubt, Regeneron's position is that the term "wherein the liquid ophthalmic formulation is suitable for intravitreal administration" should be construed as follows: "plain and ordinary meaning: wherein the liquid ophthalmic formulation is suitable for intravitreal administration." That is what the JCCS will reflect.

Notwithstanding Amgen's prejudicial conduct, Regeneron will circulate the JCCS shortly. It goes without saying that Regeneron has not had the opportunity to meaningfully review Amgen's belatedly disclosed evidence. Regeneron reserves its right to move to strike any reliance by Amgen on its belatedly disclosed evidence. Moreover, Regeneron has not had sufficient time to identify all material on which it may rely in connection with Amgen's belatedly identified

evidence. Regeneron has supplemented its evidence in the limited time available to it and reserves the right to rely on additional evidence in opposition to Amgen's arguments.

Best,

Adam

**Adam Pan**
**Associate | Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
(P) 202-434-5910 | (F) 202-434-5029
apan@wc.com | www.wc.com

---

**From:** Jennifer Nock <jnock@rothwellfigg.com>
**Sent:** Wednesday, August 5, 2026 2:03 PM
**To:** Pan, Adam <apan@wc.com>; Eylea <Eylea@wc.com>; drpogue@cdkrlaw.com; sruby@cdkrlaw.com; regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; Berl, David <DBerl@wc.com>
**Cc:** ABP938 <ABP938@rothwellfigg.com>; MGB-Amgen-ABP938 <MGB-Amgen-ABP938@marshallip.com>; AmgenLitigation@cravath.com; Kaitlyn McKitrick <kmckitrick@bowlesrice.com>; Stuart McMillan <smcmillan@bowlesrice.com>; Mary Anne Sturba <msturba@bowlesrice.com>; John R. Labbe <jlabbe@marshallip.com>
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen's Identification of Evidence Regarding Claim Construction

Counsel,

Please see attached. Additionally, please promptly provide the draft Joint Claim Construction statement due today.

Thanks,
Jen

Jennifer P. Nock
Rothwell, Figg, Ernst & Manbeck. P.C.
901 New York Avenue NW, Suite 900 East
Washington, DC 20001
Main: (202) 783-6040
Direct Dial: (202) 772-5661

The information contained in this communication is confidential, may be subject to attorney-client and/or work product privilege, and/or is intended only for the use of the addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify Rothwell, Figg, Ernst & Manbeck, P.C. at (202) 783-6040.

**From:** Pan, Adam <apan@wc.com>
**Sent:** Tuesday, August 4, 2026 7:08 PM
**To:** Jennifer Nock <jnock@rothwellfigg.com>; Eylea <Eylea@wc.com>; drpogue@cdkrlaw.com; sruby@cdkrlaw.com; regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; Berl, David <DBerl@wc.com>
**Cc:** ABP938 <ABP938@rothwellfigg.com>; MGB-Amgen-ABP938 <MGB-Amgen-ABP938@marshallip.com>; AmgenLitigation@cravath.com; Kaitlyn McKitrick <kmckitrick@bowlesrice.com>; Stuart McMillan <smcmillan@bowlesrice.com>; Mary Anne Sturba <msturba@bowlesrice.com>; John R. Labbe <jlabbe@marshallip.com>
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen's Identification of Evidence Regarding Claim Construction

Counsel,

Amgen's belated disclosure of potentially thousands of documents from seven different proceedings is plainly improper and fails to give Regeneron any notice of the evidence Amgen intends to rely on for claim construction.

Your purported "disclosure" identifies the entirety of the filings from these proceedings without limitation, and goes further to suggest that it may rely on filings from yet other, unidentified, proceedings. Contrary to your email, Amgen appears to have been well-aware of these documents, many of which appear to have been known to Amgen for over a year, including because ***Amgen itself*** was party to one of these proceedings. Amgen's disclosure is in direct violation of the Court's Order Regarding Claim Construction Schedule (ECF 924), and your letter fails to excuse Amgen's late disclosure in any meaningful way.

Instead, Amgen's disclosure appears to be an attempt to secure a strategic advantage by dumping thousands of documents on Regeneron at the eleventh hour (the majority of which have not been produced, including the Swiss document you reference in your letter). Amgen's identification of filings from a Canadian litigation also demonstrates that Amgen intends to use discovery as both a sword and a shield. For months now, Amgen has refused to produce documents from this litigation despite Regeneron's repeated requests. Yet now, Amgen appears to have cherry-picked documents to rely on in claim construction, while shielding other documents from discovery under the guise of confidentiality concerns. Amgen's late disclosure deprives Regeneron of a fair chance to respond to Amgen's evidence, including because Regeneron no longer has an opportunity under the parties' negotiated schedule to disclose expert evidence addressing these new documents.

Amgen should immediately confirm that it will withdraw this supplemental disclosure. If Amgen refuses, Regeneron reserves all rights to seek appropriate relief with respect to these belated disclosures, including but not limited to striking Amgen's disclosures and Amgen's positions relying on the evidence in these purported disclosures.

Best,

Adam

**Adam Pan**
**Associate | Williams & Connolly LLP**
680 Maine Avenue SW, Washington, DC 20024
(P) 202-434-5910 | (F) 202-434-5029
apan@wc.com | www.wc.com

---

**From:** Jennifer Nock <jnock@rothwellfigg.com>
**Sent:** Tuesday, August 4, 2026 5:54 PM
**To:** Eylea <Eylea@wc.com>; drpogue@cdkrlaw.com; sruby@cdkrlaw.com; regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; Berl, David <DBerl@wc.com>
**Cc:** ABP938 <ABP938@rothwellfigg.com>; MGB-Amgen-ABP938 <MGB-Amgen-ABP938@marshallip.com>; AmgenLitigation@cravath.com; Kaitlyn McKitrick <kmckitrick@bowlesrice.com>; Stuart McMillan <smcmillan@bowlesrice.com>; Mary Anne Sturba <msturba@bowlesrice.com>; John R. Labbe <jlabbe@marshallip.com>
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen's Identification of Evidence Regarding Claim Construction

Counsel,
Please see attached.

Best,
Jen

Jennifer P. Nock
Rothwell, Figg, Ernst & Manbeck. P.C.
901 New York Avenue NW, Suite 900 East
Washington, DC 20001
Main: (202) 783-6040
Direct Dial: (202) 772-5661

The information contained in this communication is confidential, may be subject to attorney-client and/or work product privilege, and/or is intended only for the use of the addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify Rothwell, Figg, Ernst & Manbeck, P.C. at (202) 783-6040.

---

**From:** Jennifer Nock <jnock@rothwellfigg.com>
**Sent:** Thursday, July 30, 2026 4:59 PM
**To:** eylea@wc.com; drpogue@cdkrlaw.com; sruby@cdkrlaw.com;

regeneronpatent@lists.kellogghansen.com; grp-pw-eylea-biosimilars@paulweiss.com; dberl@wc.com
**Cc:** ABP938 <ABP938@rothwellfigg.com>; MGB-Amgen-ABP938 <MGB-Amgen-ABP938@marshallip.com>; AmgenLitigation@cravath.com; Kaitlyn McKitrick <kmckitrick@bowlesrice.com>; Stuart McMillan <smcmillan@bowlesrice.com>; Mary Anne Sturba <msturba@bowlesrice.com>; John R. Labbe <jlabbe@marshallip.com>
**Subject:** RE: In re: Aflibercept Patent Litig - Amgen's Identification of Evidence Regarding Claim Construction

Counsel,

I attach for service Amgen's Identification of Evidence Regarding Claim Construction.

Best,
Jen

Jennifer P. Nock
Rothwell, Figg, Ernst & Manbeck. P.C.
901 New York Avenue NW, Suite 900 East
Washington, DC 20001
Main: (202) 783-6040
Direct Dial: (202) 772-5661

The information contained in this communication is confidential, may be subject to attorney-client and/or work product privilege, and/or is intended only for the use of the addressee. Unauthorized use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify Rothwell, Figg, Ernst & Manbeck, P.C. at (202) 783-6040.

---

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | |
|---|---|
| IN RE: AFLIBERCEPT PATENT LITIGATION<br><br>**THIS DOCUMENT RELATES TO**<br>Civil Action No. 1:24-cv-39-TSK<br>Civil Action No. 1:25-cv-74-TSK | MDL No.: 1:24-md-3103-TSK<br><br>**Claim Construction Hearing:**<br>**November 23, 2026, 9:00 am** |

**JOINT CLAIM CONSTRUCTION ~~CHART~~AND PREHEARING STATEMENT**

Pursuant to the Court's Scheduling Order (ECF 663) Plaintiff Regeneron Pharmaceuticals, Inc. ("Regeneron") and Defendant Amgen Inc. ("Amgen") submit the following Joint Claim Construction Statement ("Statement").

Regeneron has accused Amgen of infringing Regeneron's patents by making, importing, selling, and offering for sale its Pavblu product. Amgen denies infringement. The patents and claims currently asserted against Amgen are identified in the below table:

| U.S. Patent No. | Asserted Claims |
|---|---|
| 11,104,715 (the "'715 patent") | 1, 6, 12 |
| 11,472,861 (the "'861 patent") | 1, 6, 12, 26 |
| 11,535,663 (the "'663 patent") | 1, 3, 6 |
| 12,331,099 (the "'099 patent") | 3, 9, 10, 13, 20, 21, 23, 25, 26, 27, 30 |

Pursuant to the Court's Scheduling Order, on July 15, 2026, Regeneron and Amgen identified claim terms for construction. On July 22, 2026, Regeneron and Amgen exchanged proposed constructions for those identified claim terms. And on July 30, 2026, Regeneron and

Amgen each identified the intrinsic and extrinsic evidence in support of their proposed constructions. Throughout these exchanges, and continuing throughout the filing of this Statement, the parties have met and conferred to attempt to clarify and narrow the issues, and to narrow the number of disputed claim terms (as described in greater detail below). The parties have reached the following agreements:

1. The parties agreed to stipulate to the claim constructions identified in Section I below;

2. Amgen agreed not to dispute the definiteness of the remaining Asserted Claims of the ’715, ’861, and ’663 patents as identified above in reliance on Regeneron’s agreement to no longer assert any additional claims of those three patents; and

3. For the purposes of *Markman* proceedings in this case, the parties dispute only the claim term identified in Section II below.

## I. STIPULATED CONSTRUCTIONS

Pursuant to the parties’ conferrals on July 24 and July 27, 2026, and subsequent correspondence on July 28 and July 29, 2026, the parties hereby stipulate to the following constructions:

| Patent | Claim Term | Agreed-Upon Construction |
|---|---|---|
| The ’099 patent | “co-solvent” | “plain and ordinary meaning to a person of ordinary skill in the art: it is an organic substance added to the primary solvent to increase the solubility of the solute, here a VEGF antagonist” |
| The ’099 patent | “native conformation” | “plain and ordinary meaning, which is the original intact form of the VEGF antagonist, which is a form that does not exhibit chemical or physical instability” |

| | | |
|---|---|---|
| The ’099 patent | “glycosylated” | “containing at least one amino acid residue with an attached carbohydrate” |
| The ’715, ’861, and ’663 patents | “chemically defined medium” and “CDM” | “a synthetic growth medium in which the identity and concentration of all the ingredients are defined and does not contain bacterial, yeast, animal, or plant extracts or hydrolysates, animal serum, or plasma” |
| The ’715, ’861, and ’663 patents | “cumulative concentration” | “the cumulative amount of a component divided by the volume of liquid in the bioreactor at the beginning of the production batch, including the contribution to the starting volume from any inoculum used in the culture.” The “cumulative amount” is the “the total amount of a particular component added to a bioreactor over the course of the cell culture to form the CDM, including amounts added at the beginning of the culture (CDM at day 0) and subsequently added amounts of the component.” |
| The ’715, ’861, and ’663 patents | “harvested from a host cell cultured in a chemically defined medium (CDM)” | “harvested from a host cell cultured in a CDM, wherein the harvest is made using CDM” |

## II. CLAIM CONSTRUCTION DISPUTE & SUPPORTING EVIDENCE

**Regeneron’s Position.** The sole term remaining in dispute is “wherein the liquid ophthalmic formulation is suitable for intravitreal administration.” Amgen identified this term for construction; its proposed construction mysteriously inserted the words “as a whole” into the claim language. Because the import of Amgen’s construction was not evident, Regeneron sought clarification. None was forthcoming—Amgen repeatedly refused to clarify what disputed issue of claim scope it seeks to resolve by adding the words “as a whole,” what its proposed construction is intended to convey beyond the plain and ordinary meaning of the term, or why it disagrees with Regeneron’s proposed construction. In hopes of facilitating agreement or crystallizing disputes,

Regeneron proposed a compromise: "The term 'suitable for intravitreal administration' refers to the claimed composition, not only the ingredients and amounts thereof in isolation. It requires only that the composition may be administered intravitreally and does not impose functional requirements such as stability." Amgen told Regeneron that the compromise construction was unacceptable because it excluded functional requirements.

This was surprising to Regeneron because Amgen's proposed construction does not identify any such functional requirements. Accordingly, Regeneron repeatedly asked Amgen to clarify *what* functional requirements Amgen believes the term requires. Regeneron made these requests during the parties' conferral on July 24, 2026, and in-person on July 29, 2026, and by email on July 30 and July 31, 2026. Amgen declined to provide any additional information. Regeneron therefore posed questions to Amgen in writing on August 3, 2026, as follows:

- "What requirements, if any, does Amgen assert that the term 'suitable for intravitreal administration' requires?"
- "What functional requirements, if any, that are expressly referenced in the specification of the '099 patent does Amgen contend this term requires?"
- "What functional requirements, if any, that are not expressly referenced in the specification of the '099 patent does Amgen contend this term requires?"
- "Does Amgen contend the term requires any analytical testing to determine whether it is met? If so, which test(s)?"
- "Does Amgen contend the term requires an excipient buffer?"

The parties conferred once more on August 4, 2026; Amgen again refused to answer Regeneron's questions, dismissing them as "hypothetical."

They were not hypothetical. On August 4, 2026, long after the agreed-upon and court-ordered deadline for exchange of evidence, after the deadline for disclosure of intention to rely on expert testimony, and at close of business the day before this filing was due, Amgen belatedly

served on Regeneron a "Supplemental Disclosure of Claim Construction Evidence." Amgen's late disclosure purported to identify as claim-construction evidence all "[s]tatements by Regeneron," "court decisions," and "[f]ilings" (totaling many thousands of documents) across seven proceedings before the Patent Office and outside the United States. At 2:06 p.m. *today*, Amgen purported to identify more specifically certain proceedings and papers on which it intends to rely and suggested for the first time that "suitable for intravitreal administration" required consideration of certain formulation characteristics *not* set forth in Amgen's construction. This information plainly was encompassed by Regeneron's prior questions, which Amgen refused to answer. Moreover, Amgen's newly identified evidence includes papers from 2025 in Canadian litigation *as to which Amgen itself is a party*. Regeneron reserves the right to seek all appropriate relief with respect to these belated disclosures, including by moving to strike Amgen's purported disclosures and Amgen's positions relying on the evidence in those disclosures. To the extent Amgen is permitted to rely on its belatedly disclosed evidence, Regeneron further reserves the right to rely on any evidence appropriate to respond to Amgen's untimely disclosures.

Amgen still has not answered Regeneron's questions, still has not identified what it contends "suitable for intravitreal administration" requires, and still has not proposed a construction that discloses its true position. Amgen's refusal to meaningfully confer with Regeneron, and its belated disclosure of both its position and its supporting evidence, flout the Court's Scheduling Order (ECF 663) and the parties' subsequent agreement (ECF 924), and will prejudice Regeneron's ability to join issue in its briefing.

**Amgen's Position**

The sole disputed claim term is "wherein the liquid ophthalmic formulation is suitable for intravitreal administration." Amgen's proposed construction is "wherein the liquid ophthalmic

formulation, as a whole, has features making it appropriate for intravitreal administration." The meet and confer process between the parties has illuminated: (1) one issue that the parties appear to agree on relating to this claim term; and (2) a second latent issue that the parties appear to dispute.

Amgen originally proposed this term for construction because Regeneron stated during the Federal Circuit appeal of the *Mylan* case that the term required that the formulation "contains components that can be used intravitreally and nothing more." *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, Appeal No. 2024-2019, Oral Hearing Tr. at 44. Because Amgen maintains that "suitable for intravitreal administration" relates to the formulation as a whole (and should not be assessed merely on a component-by-component basis), Amgen proposed a construction of: "wherein the liquid ophthalmic formulation, as a whole, is suitable for intravitreal administration."

According to Amgen's proposed construction, the claims are limited to formulations "as a whole" that are suitable for intravitreal administration. In other words, even if, individually, formulation components are appropriate for use in a formulation for injection into the vitreous humor in the eye, the claim term requires that the liquid ophthalmic formulation resulting from the combination of those components is suitable for intravitreal administration. Regeneron appeared to agree on this point during the parties' meet and confers and its proposed construction does not suggest otherwise.

The parties' claim construction exchanges and discussions revealed a latent dispute about this term. Regeneron's original proposed construction for this term was: "plain and ordinary meaning: wherein the liquid ophthalmic formulation is acceptable for intravitreal injection."

After the parties' initial exchanges, on July 28, Regeneron's counsel proposed a "compromise claim construction": "The term 'suitable for intravitreal administration' refers to the

6

claimed composition, not only the ingredients and amounts thereof in isolation. It requires only that the composition may be administered intravitreally and does not impose functional requirements such as stability." Email from D. Berl to J. Labbe of July 28, 2026. (emphasis added).

Amgen responded that it could not agree to Regeneron's proposal because Amgen disagrees that the claim term "suitable for intravitreal administration" "does not impose functional requirements." The question of whether a formulation is suitable for intravitreal administration raises, among other things, questions of how the formulation functions. On its face, the term "suitable for intravitreal administration" includes functional limitations such that a person of ordinary skill in the art would have understood that only certain formulations have features making them appropriate for intravitreal administration, i.e., some liquid ophthalmic formulations are suitable for intravitreal administration but some are not.

Two days later, on July 30, Regeneron provided its evidence supporting its constructions. In that identification, however, Regeneron continued to propose its construction, which does not reflect any proposed language addressing whether the term has any functional requirements: "plain and ordinary meaning: wherein the liquid ophthalmic formulation is acceptable for intravitreal injection." Amgen took that to mean that Regeneron was no longer advancing its "compromise" construction.

On a subsequent meet and confer on August 4, however, Regeneron's counsel appeared to revert to its "compromise" construction, repeatedly asking Amgen what functional limitations Amgen believe were imposed by the term. During that call, it became clear that Regeneron's "compromise" construction was Regeneron's actual position regarding the meaning of the term. This was unexpected because, until now, Regeneron had consistently maintained (in other aflibercept-related legal proceedings both in the US and in other countries) that the term "suitable

for intravitreal administration" would have a meaning to a skilled artisan that includes certain functional limitations.[1] For example, during the *Mylan* trial, Regeneron's expert testified:

> [F]or intravitreal administration … we have a very thin-bore needle. High viscosity means potentially very long injection times, which I think we all don't want in the eye. And potentially, if it's too viscous, you won't even be able to use it.

*Regeneron Pharms., Inc. v. Mylan Pharms., Inc.,* No. 22-cv-61-TKS-JPM, Dkt. No. 569 (N.D.W.V., Jun. 26, 2023) (Trial Transcript, Vol. 9, Jun. 23, 2023) at 2066:17-21 (Trout Direct Testimony). Likewise, in UK proceedings, Regeneron's counsel filed a pre-trial statement that stated:

> In respect of **suitability for intravitreal administration**, Prof Gukasyan [Regeneron's Expert] explains that the Formulation Scientist would understand that a formulation would be suitable for intravitreal administration **if it has an osmolality close to or within the range of the vitreous, has a pH that is tolerated in the eye, and is non-viscous enough to be capable of being injected** (Gukasyan 1 §§6.33- 6.35).

*Formycon AG et al. v. Regeneron Pharmaceuticals, Inc. et al.*, HP-2024-000015 and HP-2024-000036 (In the High Court of Justice Business and Property Courts of England and Wales Intellectual Property List (ChD) Patents Court), Regeneron and Bayer's Trial Skeleton Argument dated June 29, 2025 at ¶ 102 (emphasis added); *see also Regeneron Pharms., Inc. v. Amgen Canada Inc.*, No. T-2137-23, Responding Validity Report of [Regeneron's expert] Dr. Douglas Kline (Fed. Ct. CA Apr. 10, 2025) at, e.g., ¶ 20 ("Intravitreal administration also presents its own unique challenges. … [H]igher viscosity can present a problem because needles used for intravitreal injections have a small gauge as compared to, for example, needles used for

[1] To be clear, the '099 Patent itself was not subject of these other proceedings. Rather, these matters concerned either family members of the '099 Patent, or foreign counterparts to the '099 Patent family. That means that the patents at issue in these other matters claim priority to the same application as the '099 Patent, and they included the exact same claim term in those claims.

intravenous administration. A viscous solution may have difficulty being pushed through a small gauge needle and can create added stress on the protein and lead to stability problems.”).

Additionally, after submitting its July 30 disclosure of intrinsic and extrinsic evidence supporting claim construction, Amgen learned of a Swiss Patent Court decision involving a counterpart of the ’099 Patent asserted against third-party Formycon, a different biosimilar applicant. This decision confirms that Regeneron likewise argued in that proceeding that “a formulation suitable for intravitreal administration must have a low viscosity, because the needles used for intravitreal administration are very thin…” Federal Patent Court [FPC] S2025_003 (Switz.), Judgment dated July 17, 2026 at ¶ 60 (noting this fact was “undisputed in the present proceedings”).

Because it had become apparent to Amgen that Regeneron was either going to avoid bringing the issue to the Court for resolution during claim construction or, if pressed by Amgen, would argue that the term does not impose any functional limitations, Amgen promptly disclosed the Swiss Patent Court decision in its Supplemental Identification of Evidence on August 4, 2026 (just three business days after the parties’ initial exchange of evidence), along with evidence of Regeneron’s similar arguments in UK and Canadian proceedings, as well as in PTAB proceedings for which Regeneron selectively cited other documents in its own disclosure of evidence for claim construction. That is the disclosure that Regeneron objects to as “late.” On August 5, Amgen provided specific pin cites to relevant passages of the documents it cited on August 4. Amgen did not identify any new materials on August 5. There is no prejudice to Regeneron from Amgen citing during claim construction the arguments Regeneron made in court proceedings involving the same Furfine patent family at issue in this case.

In the late afternoon of August 5, Regeneron modified its claim construction again. Now, Regeneron's position is that the term should be construed as "plain and ordinary meaning: wherein the liquid ophthalmic formulation is suitable for intravitreal administration." At the same time, Regeneron has continued to make clear in correspondence between the parties that it believes the term does not impose any functional limitations.

As it has become clear to Amgen that there is a latent dispute between the parties about the plain and ordinary meaning of "suitable for intravitreal administration" and whether that limits the formulation in any way (as Amgen proposes), or it does not (as Regeneron appears to argue), Amgen has further clarified its proposed construction to expressly state what Amgen had previously believed had been understood—that the claimed formulations, as a whole, must have features to perform for its intended purpose, i.e., administration [of aflibercept] into the vitreous gel inside the eye.

As Amgen intends to address in its claim construction briefing, Amgen's proposed construction is consistent with the plain and ordinary meaning of the term in view of the '099 patent's specification, and is the meaning that Regeneron has adopted in proceedings around the world involving related and counterpart patents. Amgen's proposed construction properly gives weight and meaning to the language "suitable for intravitreal administration" and reflects that it is a true limitation on the scope of the claim—not every formulation is suitable for intravitreal administration—only those having features making it appropriate for intravitreal administration.

The parties request that the Court resolve the following claim-construction dispute.

| **Patent** | **Claim Term** | **Regeneron's Proposed Construction** | **Amgen's Proposed Construction** |
|---|---|---|---|
| The '099 patent | "wherein the liquid ophthalmic formulation is suitable for intravitreal administration" | "plain and ordinary meaning: wherein the liquid ophthalmic formulation is suitable for intravitreal administration" | "wherein the liquid ophthalmic formulation, as a whole, ~~is suitable~~has features making it appropriate for intravitreal administration" |

| **Regeneron's Identified Intrinsic and Extrinsic Evidence** | **Amgen's Identified Intrinsic and Extrinsic Evidence** |
|---|---|
| **Regeneron's Identified Intrinsic Evidence**<br>• '099 patent, title, abstract, 1:55-62, 1:66-2:20, 2:24-5:36, 5:41-56, 6:34-8:5, 8:9-33, 8:35-12:30, Tables 1-8.<br>• '099 patent, claims 1-30.<br>• Gerber et al. (2000) Cancer Res. 60:6253-6258.<br>• Kim et al. (2002) Proc. Natl. Acad. Sci. USA 99:11399-404.<br>• Holash et al. (2002) Proc. Natl. Acad. Sci. USA 99:11393-8.<br>• U.S. Patent No. 7,033,604.<br>• U.S. Patent No. 6,777,429.<br>• U.S. Patent No. 6,676,941.<br>• U.S. Patent No. 6,436,897.<br>• U.S. Patent Application No. 18/924,707, October 23, 2024 Preliminary Amendment.<br>• U.S. Patent Application No. 18/924,707, November 29, 2024 Non-final Rejection.<br>• U.S. Patent Application No. 18/924,707, January 30, 2025 Amendment and Response.<br>• U.S. Patent Application No. 18/924,707, February 20, 2025 Notice of Allowance.<br>• U.S. Patent Application No. 18/344,786, June 29, 2023 Preliminary Amendment.<br>• U.S. Patent Application No. 18/344,786, October 25, 2023 Preliminary Amendment. | **Amgen's Identified Intrinsic and Extrinsic Evidence**<br>• The entire specification for the '099 patent, including but not limited to: References Cited, Related Applications, Title, Abstract, Examples, Claims, and in particular, the following portions of the '099 patent: 1:1-3; 1:55-59; 2:43-3:26; 3:35-67; 4:9-16; 5:32-34; 5:60-6:2; 6:22-24; 6:48-64; 7:14-29; 8:34- 10:67<br>• Trial Testimony of Kenneth S. Graham, PhD in *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, No. 22-cv-61, Day 7 Tr. at 1665-1803, including but not limited to: 1677:25-1678:8; 1679:13-21; 1680:7-10; 1682:2-13; 1683:4-16; 1685:7-15; 1687:3-1688:4; 1688:17-1690:3; 1691:3-5; 1693:11-13; 1694:25- 1695:5; 1701:5-11; 1707:20-22; 1716:2-1717:6; 1721:14-1722:8; 1741:24:1742-10; 1770:20-1771:25; 1781:17-22; 1785:24-1786:6<br>• Trial Testimony of Eric Furfine, PhD in *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, No. 22-cv-61- TSK, Day 2 Tr. at 442-553 and Day 3 Tr. at 540-565, including but not limited to: 470:8-471:4; 476:2- 477:8; 480:18-481:12; 484:6-11; 498:17-20<br>• Trial Testimony of Bernard Trout, PhD in *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, No. 22-cv-61-TSK, Day 3 Tr. at 567-581, Day 8 Tr. at 2011-2053, and Day 9 Tr. at 2060- |

| | |
|---|---|
| • U.S. Patent Application No. 18/344,786, May 17, 2024 Non-final Rejection.<br>• U.S. Patent Application No. 18/344,786, November 27, 2024 Notice of Abandonment.<br>• U.S. Patent Application No. 17/348,438, June 15, 2021 Claims.<br>• U.S. Patent Application No. 17/348,438, July 28, 2021 Preliminary Amendment.<br>• U.S. Patent Application No. 17/348,438, January 19, 2023 Non-final Rejection.<br>• U.S. Patent Application No. 17/348,438, April 19, 2023 Amendment and Response.<br>• U.S. Patent Application No. 17/348,438, May 17, 2023 Notice of Allowance.<br>• U.S. Patent Application No. 16/582,486, September 25, 2019 Claims.<br>• U.S. Patent Application No. 16/582,486, September 26, 2019 Preliminary Amendment.<br>• U.S. Patent Application No. 16/582,486, July 13, 2020 Preliminary Amendment.<br>• U.S. Patent Application No. 16/582,486, January 6, 2021 Non-final Rejection.<br>• U.S. Patent Application No. 16/582,486, March 2, 2021 Interview Summary and Amendment.<br>• U.S. Patent Application No. 16/582,486, April 26, 2021 Supplemental Reply and Amendment.<br>• U.S. Patent Application No. 16/582,486, May 12, 2021 Notice of Allowance.<br>• U.S. Patent Application No. 16/739,559, January 10, 2020 Preliminary Amendment. | 2204, including but not limited to: 572:24-573:2; 576:24-577:9; 578:2-579:10; 580:5-11; 2066:17-21<br>• Regeneron's Proposed Findings for Fact and Conclusions of Law in *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, No. 22-cv-61-TSK, ECF 590, including but not limited to ¶¶ 3, 49, 118, 413<br>• Regeneron's Responsive Post-Trial Brief Addressing Validity of the Asserted Patents in *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, No. 22-cv-61- TSK, ECF 589, including but not limited to pp. 6, 10<br>• Regeneron's Reply Post-Trial Brief Addressing Infringement of the Asserted Patents in *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, No. 22-cv-61- TSK, ECF 597, including but not limited to p. 5<br>• *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 714 F. Supp. 3d 652 (N.D.W. Va. 2024), including but not limited to 714 F. Supp. 3d at 681-82, 690-92, 707, 743<br>• Prior art of record during prosecution of the '099 patent, including but not limited to:<br><br>U.S. Securities and Exchange Commission, Form 10- K, Regeneron Pharmaceuticals, Inc. (Feb. 28, 2006), including but not limited to p. 3<br><br>Press Release, Regeneron Pharmaceuticals, Inc., *Regeneron's VEGF Trap Demonstrates Positive Preliminary Results in Patients with Age-related Macular Degeneration*, (Feb. 2, 2006), including but not limited to p. 5<br><br>Avery, R.L. et al., *Intravitreal Bevacizumab (Avastin) for Neovascular Age-Related Macular* |

| | |
|---|---|
| • U.S. Patent Application No. 16/739,559, March 24, 2021 Non-final Rejection.<br>• U.S. Patent Application No. 16/739,559, May 5, 2021 Interview Summary and Amendment.<br>• U.S. Patent Application No. 16/739,559, June 9, 2021 Notice of Allowance.<br>• U.S. Patent Application No. 16/739,559, June 16, 2021 Amendment After Notice of Allowance.<br>• U.S. Patent Application No. 16/739,559, June 29, 2021 Response to Amendment Under Rule 312.<br>• *Samsung Bioepis Co. v. Regeneron Pharm., Inc.*, IPR2025-00176, Paper 12 (P.T.A.B. June 2, 2025).<br>• *Formycon AG v. Regeneron Pharm., Inc.*, IPR2025-00233, Paper 15 (P.T.A.B. June 2, 2025).<br>• *Celltrion, Inc. v. Regeneron Pharm., Inc.*, IPR2025-00456, Paper 14 (P.T.A.B. June 25, 2025).<br>• *Fresenius Kabi SwissBioSim GmbH v. Regeneron Pharm., Inc.*, IPR2025-01268, Papers 11 & 14 (P.T.A.B. Nov. 20, 2025, and Feb. 10, 2026).<br>• U.S. Patent Application No. 16/159,269, October 12, 2018 Preliminary Amendment.<br>• U.S. Patent Application No. 16/159,269, April 2, 2019 Non-final Rejection.<br>• U.S. Patent Application No. 16/159,269, July 22, 2019 Amendment and Response.<br>• U.S. Patent Application No. 16/159,269, August 21, 2019 Notice of Allowance.<br>• U.S. Patent Application No. 16/159,269, January 17, 2024 Statutory Disclaimer. | *Degeneration*, Ophthalmology 2006; 113:363-372<br><br>Spaide R. F. et al., *Intravitreal bevacizumab treatment of choroidal neovascularization secondary to age-related macular degeneration*, Retina, The Journal of Retinal and Vitreous Diseases (April 2006) vol 26; number 4; 383 – 390<br><br>*Method for treating intraocular neovascular diseases*, International Patent Publ. No. WO 2006/047325 (Publication Date: May 4, 2006), including but not limited to 31:27-32:26; 34:2-9<br><br>Chang et al., *Practical Approaches to Protein Formulation Development, in Rational Design of Stable Protein Formulations* (J.F. Carpenter & M.C. Manning eds., 2002), pp. 1-25, including but not limited to at 13-16<br><br>*Antiprostaglandins for the treatment of ocular pathologies*, International Patent Publ. No. WO 2020/160133 (Publication Date: November 3, 2005), including but not limited to 11:25-30; 25:15-17; 27:26-28:5<br><br>**<u>Amgen's Supplemental Identification of Intrinsic and Extrinsic Evidence*</u>**<br>• Statements by Regeneron and court decisions in proceedings involving family members and counterparts of the '099 patent, including but not limited to:<br><br>Filings in *Samsung Bioepis Co., Ltd. v. Regeneron Pharmaceuticals, Inc.*, IPR2025-00176 (Patent Trial and Appeal Board), including but not limited to: Petition for *Inter Partes* Review of U.S. Patent No. |

| | |
|---|---|
| • U.S. Patent Application No. 15/879,294, January 24, 2018 Preliminary Amendment.<br>• U.S. Patent Application No. 15/879,294, January 10, 2019 Non-final Rejection.<br>• U.S. Patent Application No. 15/879,294, April 8, 2019 Amendment and Response.<br>• U.S. Patent Application No. 15/879,294, May 1, 2019 Notice of Allowance.<br>• U.S. Patent Application No. 15/095,606, April 11, 2016 Claims.<br>• U.S. Patent Application No. 15/095,606, July 5, 2017 Non-final Rejection.<br>• U.S. Patent Application No. 15/095,606, October 5, 2017 Amendment and Response.<br>• U.S. Patent Application No. 15/095,606, November 1, 2017 Notice of Allowance.<br>• U.S. Patent Application No. 15/151,776, May 11, 2016 Claims.<br>• U.S. Patent Application No. 15/151,776, July 18, 2016 Non-final Rejection.<br>• U.S. Patent Application No. 15/151,776, October 18, 2016 Amendment and Response.<br>• U.S. Patent Application No. 15/151,776, November 7, 2016 Notice of Allowance.<br>• U.S. Patent Application No. 14/330,096, July 14, 2014 Claims.<br>• U.S. Patent Application No. 14/330,096, April 2, 2015 Non-final Rejection.<br>• U.S. Patent Application No. 14/330,096, September 2, 2015 Amendment and Response.<br>• U.S. Patent Application No. 14/330,096, November 20, 2015 Final Rejection. | 11,084,865; Patent Owner's Preliminary Response<br><br>Filings in *Formycon AG v. Regeneron Pharmaceuticals, Inc.*, IPR2025-00233 (Patent Trial and Appeal Board), including but not limited to: Petition for *Inter Partes* Review of U.S. Patent No. 11,084,865; Patent Owner's Preliminary Response<br><br>Filings in *Celltrion, Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2025-00456 (Patent Trial and Appeal Board), including but not limited to: Petition for *Inter Partes* Review of U.S. Patent No. 11,084,865; Patent Owner's Preliminary Response<br><br>Filings in *Fresenius Kabi SwissBioSim GmbH v. Regeneron Pharmaceuticals, Inc.*, IPR2025-01268 (Patent Trial and Appeal Board), including but not limited to: Petition for *Inter Partes* Review of U.S. Patent No. 11,084,865 B2; Patent Owner's Preliminary Response<br><br>Filings in *Formycon AG et al. v. Regeneron Pharmaceuticals, Inc. et al.*, HP-2024-000015 and HP-2024-000036 (In the High Court of Justice Business and Property Courts of England and Wales Intellectual Property List (ChD) Patents Court), including but not limited to: Regeneron and Bayer's Trial Skeleton Argument dated June 29, 2025; [2025] EWHC (Pat) 2527 (Judgment dated October 8, 2025)<br><br>Filings in *Regeneron Pharmaceuticals, Inc. et al. v. Sandoz Pharmaceuticals AG et al.*, Federal Patent Court [FPC] S2025_003 (Switz.), including but not limited to |

| | |
|---|---|
| • U.S. Patent Application No. 14/330,096, February 15, 2016 Response to Final Office Action.<br>• U.S. Patent Application No. 14/330,096, March 2, 2016 Notice of Allowance.<br>• U.S. Patent Application No. 13/914,996, June 11, 2013 Claims.<br>• U.S. Patent Application No. 13/914,996, October 8, 2013 Non-final Rejection.<br>• U.S. Patent Application No. 13/914,996, April 7, 2014 Amendment and Response.<br>• U.S. Patent Application No. 13/914,996, April 25, 2014 Notice of Allowance.<br>• U.S. Patent Application No. 13/329,770, December 19, 2011 Claims.<br>• U.S. Patent Application No. 13/329,770, September 27, 2012 Non-final Rejection.<br>• U.S. Patent Application No. 13/329,770, January 25, 2013 Amendment and Response.<br>• U.S. Patent Application No. 13/329,770, March 20, 2013 Notice of Allowance.<br>• U.S. Patent Application No. 12/833,417, July 9, 2010 Claims.<br>• U.S. Patent Application No. 12/833,417, September 16, 2011 Notice of Allowance.<br>• U.S. Patent Application No. 12/833,417, October 25, 2011 Notice of Allowance.<br>• U.S. Patent Application No. 12/560,885, September 16, 2009 Claims.<br>• U.S. Patent Application No. 12/560,885, June 25, 2010 Notice of Allowance. | Judgment dated July 17, 2026<br><br>Filings in *Regeneron Pharms., Inc. v. Amgen Canada Inc.*, No. T-2137-23 (Fed. Ct. CA), including but not limited to Trial Vol. 1 (May 27, 2025); Trial Vol. 2 (May 28, 2025); Trial Vol. 3 (June 3, 2025); Trial Vol. 4 (June 4, 2025); the Responding Validity Report of Dr. Douglas Kline (April 10, 2025) |

| | |
|---|---|
| • U.S. Patent Application No. 11/818,463, June 14, 2007 Claims and Specification.<br>• U.S. Patent Application No. 11/818,463, September 30, 2008 Requirement of Election/Restrictions.<br>• U.S. Patent Application No. 11/818,463, October 17, 2008 Response to Restriction.<br>• U.S. Patent Application No. 11/818,463, January 30, 2009 Non-final Rejection.<br>• U.S. Patent Application No. 11/818,463, April 28, 2009 Amendment and Response.<br>• U.S. Patent Application No. 11/818,463, June 22, 2009 Notice of Allowance.<br>• U.S. Patent Application No. 60/814,484.<br><br>**Regeneron's Identified Extrinsic Evidence**<br>• *Regeneron Pharm., Inc. v. Mylan Pharm. Inc.*, No. 22-cv-61, Dkt. 692 (N.D.W. Va. Jan. 31, 2024).<br>• Trial Testimony of Drs. Eric Furfine, Bernhardt Trout, Gregory MacMichael, and Barrett Rabinow, *Regeneron Pharm., Inc. v. Mylan Pharm. Inc.*, No. 22-cv-61 (N.D.W. Va.).<br>• *In re Aflibercept Pat. Litig.*, 24-md-03103, Dkt. 194 (N.D.W. Va. June 24, 2024).<br>• *In re Aflibercept Pat. Litig.*, 24-md-03103, Dkt. 247 (N.D.W. Va. July 9, 2024).<br>• *In re Aflibercept Pat. Litig.*, 24-md-03103, Dkt. 248 (N.D.W. Va. July 9, 2024).<br>• *Regeneron Pharm., Inc. v. Mylan Pharm. Inc.*, No. 24-1965, Dkt. 76 (Fed. Cir. Jan. 29, 2025).<br>• *Regeneron Pharm., Inc. v. Mylan Pharm. Inc.*, No. 24-2009, Dkt. 67 (Fed. Cir. Jan. 29, 2025). | |

| | |
|---|---|
| • *Regeneron Pharm., Inc. v. Mylan Pharm. Inc.*, No. 24-2058, Dkt. 62 (Fed. Cir. Mar. 5, 2025).<br>• WO 2005/102303 A2.<br>• Byeong S. Chang & Susan Hershenson, *Chapter 1: Practical Approaches to Protein Formulation Development*, *in* Rational Design of Stable Protein Formulations: Theory and Practice (John F. Carpenter & Mark C. Manning, eds., 2002).<br>• U.S. 2024/0415929 A1.<br>• U.S. 2025/0082726 A1.<br>• *Samsung Bioepis Co. v. Regeneron Pharm., Inc.*, IPR2025-00176, Exs. 1002 (Declaration of Dr. Alpaslan Yaman) & 1005 (Declaration of Dr. Edward Chaum) (P.T.A.B.).<br>• *Formycon AG v. Regeneron Pharm., Inc.,* IPR2025-00233, Exs. 1002 (Declaration of Dr. Laird Forrest) & 1005 (Declaration of Dr. Todd Lefkowitz) (P.T.A.B.).<br><br>**Regeneron's Identification of Intrinsic and Extrinsic Evidence Responsive to Amgen's August 4 and August 5, 2026 Disclosures**[+]<br>• Munich I Regional Court, Judgment No. 7 O 16055/24 of 23 October 2025 | |

* Amgen supplemented its identification of evidence on August 4, 2026 and provided pin cites to exemplary passages in that same evidence on August 5, 2026. Amgen's position is that this supplementation is not prejudicial to Regeneron; these disclosures consist of Regeneron's statements and admissions by Regeneron and its representatives and experts, in foreign proceedings and additional documents from PTAB proceedings identified in Regeneron's July 30 disclosures.

[+] Regeneron disputes that Amgen may rely on any of its belatedly identified evidence from its August 4 and August 5, 2026 Disclosures and reserves all rights to seek appropriate relief.

Amgen's late disclosures did not permit Regeneron sufficient time to review Amgen's new evidence before this filing was due. To the extent Amgen is permitted to rely on its belatedly disclosed evidence, Regeneron reserves the right to rely on any evidence within the scope of Amgen's August 4 and August 5, 2026 Disclosures, as well as to rely on any documents necessary for responding to Amgen's untimely disclosures. Regeneron's identification of Responsive

evidence herein is made in the spirit of disclosure and without limitation on its right to rely on additional evidence.

Formatted: Normal, Justified

## III. PREHEARING STATEMENT

The parties request 30 minutes of argument per side at the claim construction hearing. The parties do not intend to present any witness testimony.

Date: August ~~5~~6, 2026

*Of Counsel*:

David I. Berl (admitted *PHV*)
Ellen E. Oberwetter (admitted *PHV*)
Benjamin M. Greenblum (admitted *PHV*)
Thomas S. Fletcher (admitted *PHV*)
Andrew V. Trask (admitted *PHV*)
Teagan J. Gregory (admitted *PHV*)
Shaun P. Mahaffy (admitted *PHV*)
Kathryn S. Kayali (admitted *PHV*)
Adam Pan (admitted *PHV*)
Rhochelle Krawetz (admitted *PHV*)
Jennalee Beazley (admitted *PHV*)
Mark Aneke (admitted *PHV*)
Chorong Song (admitted *PHV*)
Mitsoo Patel (admitted *PHV*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
dberl@wc.com
eoberwetter@wc.com
bgreenblum@wc.com
tfletcher@wc.com
atrask@wc.com
tgregory@wc.com
smahaffy@wc.com
kkayali@wc.com
apan@wc.com
rkrawetz@wc.com
jbeazley@wc.com
caneke@wc.com
csong@wc.com
mpatel@wc.com
*Attorneys for Plaintiff Regeneron Pharmaceuticals, Inc.*

CAREY DOUGLAS KESSLER & RUBY, PLLC

*/s/* ______________________________
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
707 Virginia Street East
901 Chase Tower (25301)
P.O. Box 913
Charleston, West Virginia 25323
(304) 345-1234
sruby@cdkrlaw.com
drpogue@cdkrlaw.com

*Attorneys for Plaintiff Regeneron Pharmaceuticals, Inc.*

**AMGEN INC.,**

*/s/*____________________________
John R. Labbe (PHV)
Kevin M. Flowers (PHV)
Thomas Burns (PHV)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606
(312) 474-6300

E. Anthony Figg (PHV)
Joseph A. Hynds (PHV)
Jennifer Nock (PHV)
Brett A. Postal (PHV)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W.
Suite 900 East
Washington, DC 20001
(202) 783-6040

Stuart A. McMillan [WVSB #6352]
smcmillan@bowlesrice.com
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia 25301
(304) 347-1110

Kaitlyn N. McKitrick [WVSB #12782]
kmckitrick@bowlesrice.com
BOWLES RICE LLP
125 Granville Square
Morgantown, West Virginia 26505
(304) 285-2500 – Telephone
(304) 285-2575 – Facsimile

Jesse M. Weiss (PHV)
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

Wendy Whiteford (PHV)
Eric Agovino (PHV)

Chanson Chang (PHV)
Pauline Pelletier (PHV)
Gregory Bonifield (PHV)
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320
(805) 447-1000

*Attorneys for Defendant Amgen Inc.*