# EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

VOLTERRA SEMICONDUCTOR LLC, : CIVIL ACTION
:
Plaintiff, :
:
vs. :
:
MONOLITHIC POWER SYSTEMS, :
INC., :
:
Defendant. : NO. 19-2240-CFC-SRF

- - -

Wilmington, Delaware
Friday, November 12, 2021
9:06 o'clock, a.m.

- - -

BEFORE: HONORABLE COLM F. CONNOLLY, Chief Judge

- - -

APPEARANCES:

FISH & RICHARDSON P.C.
BY: ROBERT M. OAKES, ESQ.

-and-

Valerie J. Gunning
Official Court Reporter

APPEARANCES (Continued):

FISH & RICHARDSON P.C.
BY: DAVID M. BARKAN, ESQ. and
AARON PIROUZNIA, ESQ.
(Redwood City, California)

Counsel for Plaintiff

SHAW KELLER LLP
BY: ANDREW RUSSELL, ESQ.

-and-

LATHAM & WATKINS LLP
BY: BOB STEINBERG, ESQ. and
KUMAR RAVULA, ESQ.

-and-

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
BY: LIONEL M. LAVENUE, ESQ.

Counsel for Defendant

\- - -

P R O C E E D I N G S

(Proceedings commenced in the courtroom beginning at 9:06 a.m.)

THE COURT: All right. Good morning. Please be seated.

So I'm 30 feet away from you, so I'm not going to wear a mask. I'm vaccinated. If you are not wearing a mask and you are vaccinated, you don't have to wear a mask. I will leave it to your discretion. All right.

Okay. Mr. Oakes?

MR. OAKES: Good morning, Your Honor. Bob Oakes, Fish & Richardson, on behalf of plaintiff, Volterra. With me are my colleagues, David Barkan and Aaron Pirouznia, also from Fish & Richardson.

MR. PIROUZNIA: Good morning, Your Honor.

THE COURT: Okay. All right. Mr. Russel?

MR. RUSSELL: Good morning. Andrew Russel from Shaw Keller for the defendant MPS, and with me from Latham & Watkins are Bob Steinberg, Kumar Ravula and Lionel Lavenue from Finnegan.

THE COURT: Thank you.

MR. STEINBERG: Good morning, Your Honor.

THE COURT: Good morning. All right.

MR. OAKES: Your Honor, the parties have discussed -- unless you have a preference on the order of terms, we have discussed an order of terms.

THE COURT: I think we're only doing five terms, it looks like.

MR. OAKES: Yes. I don't know if you have a preference. We've discussed and have agreed to something if you don't have a preference.

THE COURT: I don't really care. I've read them all. If you agree on something, this certainly ranks up there as one of the worst cases in terms of contentiousness, that's for sure. So if you've got agreement, let's go for it.

MR. OAKES: Okay. In that case, we'll start with orienting, in a like direction.

THE COURT: All right.

MR. PIROUZNIA: Good morning, Your Honor. May it please the Court, my name is Aaron Pirouznia on behalf of Volterra, and I will arguing our first term, orienting, in like direction.

This term is from the '986 patent and it's from method claim 17, and Volterra's proposal is that the term orienting, in like direction should be construed to have its plain meaning as that plain meaning is defined in the patent through numerous examples.

And, Your Honor, if we look at those examples, we'll see that you know you're oriented, in like direction when the --

THE COURT: Sir, actually, what I'd like you to do is right at the outset is to give me your plain and ordinary meaning. What is it? We're not going to tell the jury in the jury instructions the plain and ordinary meaning of "orienting, in like direction." I'm going to write it down. You tell me as precisely as you can, what is it?

MR. PIROUZNIA: Yes. That plain meaning is that your windings are oriented --

THE COURT: Literally, we're going to do it like grammatically correct. All right. Orienting, do you think that's a noun? What do you think that is?

MR. PIROUZNIA: Orienting is a verb.

THE COURT: Orienting is a verb?

MR. PIROUZNIA: Yes, Your Honor. If we look at the entire method claim, let me jump forward a couple slides. You'll see there are two main steps. There's orienting.

THE COURT: Okay. Yes. Orienting, fine. As used in here, yes. Orienting. So you give me in the right verb form that I'm going to substitute orienting, in like direction. What am I going to tell the jury?

MR. PIROUZNIA: Your Honor, if I could just flip

to a slide to make sure my words are matching what the spec uses, that would help me make sure I'm saying it correctly.

THE COURT: Whatever you need. I'm going to copy it down. Tell me when you are ready.

MR. PIROUZNIA: I appreciate it, Your Honor. I just want to make sure I'm using the right words here because the patent describes it as "the physical orientation and electrical connection." I want to make sure I didn't use a synonym in place of that.

THE COURT: What you are demonstrating to me is, there's no way this is plain and ordinary meaning. There's no way we can ask a jury, because the fact that we've been here two minutes and you have not been able to articulate for me anything specific tells me we're going to have to instruct the jury about this. But I appreciate it. I want you to be precise, so whenever you are ready, you tell me.

MR. PIROUZNIA: Yes, Your Honor. Orienting, in like direction means that you are having -- you're placing --

THE COURT: So it's going to be placing. Go ahead.

MR. PIROUZNIA: The first and second windings.

THE COURT: The first and second windings.

MR. PIROUZNIA: With a physical orientation.

THE COURT: With a physical orientation.

MR. PIROUZNIA: And electrical connection.

THE COURT: And electrical connection.

MR. PIROUZNIA: Such that the flux.

THE COURT: Such that the flux.

MR. PIROUZNIA: Generated.

THE COURT: Generated.

MR. PIROUZNIA: By your windings.

THE COURT: By your findings?

MR. PIROUZNIA: Excuse me, Your Honor. By the windings.

THE COURT: By the windings.

MR. PIROUZNIA: Flows in an opposite direction.

THE COURT: Flows in an opposite direction.

MR. PIROUZNIA: When.

THE COURT: When.

MR. PIROUZNIA: The windings.

THE COURT: When the windings.

MR. PIROUZNIA: Are activated.

THE COURT: Are activated.

MR. PIROUZNIA: With a positive current.

THE COURT: With a positive current.

MR. PIROUZNIA: Believe it or not, Your Honor, that's my end to the construction. I won't make you write

down any more words. But that last part is very important, with a positive current, and that's what's missing from MPS' proposal, and by leaving that part out, we're reading out half of our invention. And I can show you in the specification where that is described and why MPS' ignorance of that current direction is reading out half of the invention.

THE COURT: Okay. Give me a second. All right. Now, I just want to make sure.

Defendant, can you accept that construction?

MR. STEINBERG: I'm sorry. I was distracted.

THE COURT: All right.

MR. STEINBERG: Your Honor, did you ask me something?

THE COURT: Yes.

MR. STEINBERG: I apologize.

THE COURT: That's all right.

MR. STEINBERG: What did you ask me?

THE COURT: Can you accept that construction?

MR. STEINBERG: Yes.

THE COURT: So your construction, which I thank you for actually proposing something.

MR. STEINBERG: Thank you, Your Honor.

THE COURT: Your construction is, "Windings are wound in such a way so that the flux between the windings

flows in opposite directions."

MR. STEINBERG: Correct.

THE COURT: All right. So they are changing it -- they've now proposed --

MR. STEINBERG: Yes.

THE COURT: -- something. So they are now placing the first and second windings with a physical orientation and electrical connection such that the flux generated by the windings flows in an opposite direction when the windings are activated with a positive current.

MR. STEINBERG: Yes, Your Honor. It's closer. I like that. But you won't know what a physical orientation or a current or electrical orientation is. Those two things together have to be set up in such a way to show that the flux always goes in opposite directions, and so leaving it to the jury to understand that point, it's going to be a problem.

THE COURT: But, you know, I'm trying to think. Yours doesn't seem any more helpful to the jury, you could argue then, right, because you're okay with windings are wound in such a way so that flux between the windings flows in opposite directions.

MR. STEINBERG: That's correct, and that's because that is the -- two reasons.

First of all, it's easier for the jurors to

understand when flux is flowing, the magnetic fields are flowing away from each other. That's number one. They don't have to worry about the orientation physically of the winding or the electrical connection.

And, number two, it is exactly defined that way, the lexicography.

THE COURT: We'll get into argument.

MR. STEINBERG: Okay.

THE COURT: I thought you might agree. I thought we were pretty close.

MR. STEINBERG: Okay. We're close. That's the first time I heard that argument.

THE COURT: Well, same here. All right. Go ahead.

MR. PIROUZNIA: Your Honor, I actually want to start from there, because MPS does agree with our proposal and we'll see that from Footnote 6 from the joint brief. Input note 6, they don't have the same proposal that my colleague has just said right now. They actually indicate that the technically precise meaning as the cited passages of the '986 patent indicate -- and, Your Honor, this is on page 24 of docketed entry --

THE COURT: Yes. Frankly, go ahead. Point me to specifically -- hold on a second. Yes. Point me to what you think is best, because this struck me as kind of a

bizarre footnote. There are no citations in it and there are all of these alternative proposals and they're in quotations. Actually, is there one in here that matches what you said?

MR. PIROUZNIA: Your Honor, this is close to what we said, but in talking about positive current, it talks about current flows in the windings toward the output voltage and that's not how the patentee used the license in the specification to describe it. It talks about when you have positive current generating flux in an opposite direction, but it talks about other scenarios when your flux will not be in opposite direction, it will actually be in the same direction. And that's why that -- that description of how your current is flowing is so important, because without that context --

THE COURT: So hold on, so hold on. So they were okay with windings are wound in such a way so that flux between the windings flows in opposite directions around the main magnetizing flux path, flux path of the common core when current flows in the windings toward the output voltage.

So really, the only difference between what they've said and what you've said here is the toward the output voltage is different. Right? So, in other words, I've got agreement and then I've just got to decide the

difference between toward the output voltage and activated with a positive current?

MR. PIROUZNIA: That's right, Your Honor.

THE COURT: That's really the dispositive turning point.

MR. PIROUZNIA: I agree with that, Your Honor, and I think it's important to choose between positive current as the specification describes it and MPS' proposal of flows in the windings towards the output voltage, because with MPS' proposal, they're going to be able something to the jury that contradicts the patent.

They are going to say these are power converters, your current is always flowing towards the output, so you have flux in opposite directions, but if we look at the spec, that's not true. Sometimes your current is flowing in a positive direction, you have your flux and output direction. Other times one winding has positive current, the other has negative, and so your flux is flowing in the same direction, and it gives both of these examples, and there are two halves to our invention.

We can't just --

THE COURT: Okay. Stop. So let me hear from the defendant. Do you agree that the dispositive question for my construction of this first disputed term boils down to whether or not the current flows toward the output

voltage, that would be your position, as opposed to the current -- the windings are activated with a positive current?

MR. STEINBERG: The first way you said it is the way we would agree with.

THE COURT: Right. I get that. But I'm just trying --

MR. STEINBERG: Yes.

THE COURT: I'm trying to minimize what I have to decide.

MR. STEINBERG: Sure.

THE COURT: In other words, do you agree that's the real issue?

MR. STEINBERG: Yes.

THE COURT: That's what all of these terms are?

MR. STEINBERG: I agree that could be added to our construction without changing what our construction is.

THE COURT: Well, what could be added?

MR. STEINBERG: Flowing, the current flowing to the output voltage.

THE COURT: Yes, but you've already conceded in your brief. My recollection is in Footnote 6 you said you could live with this. So what I'm going to -- the reason I'm asking is, so I'm not going to opine, I'm not going to talk about case law, I'm not going to talk about anything

else in the patent on this first term except for this issue, and what I want you folks -- because you both agree, this is the dispositive question. Right?

MR. STEINBERG: Dispositive is --

THE COURT: In other words, you've got a debate and it's going to either be toward the output voltage if you are right or it's going to be when windings are activated with a positive current, they're right.

MR. STEINBERG: Yes.

THE COURT: You agree?

MR. STEINBERG: I agree with that.

THE COURT: And you both say -- I don't know that you really both say plain and ordinary meaning, because it's really not. I mean, it clearly requires some elucidation.

MR. STEINBERG: Yes.

THE COURT: But that's the question before me and that's all I'm going to focus on.

So basically, you each now dedicate your presentations on this term to where -- in the written description, figures and claims -- is there support for your competing positions. All right?

MR. PIROUZNIA: Certainly, Your Honor.

THE COURT: All right. Great. Let's do that.

So what I'm about to hear is the plaintiff is

going to tell me why this term construction hinges on the windings being activated with a positive current.

MR. PIROUZNIA: Yes, Your Honor. And to clarify, the positive current is giving us the context of how we're understanding to be in like orientation and that's why it's so important to be in the construction.

THE COURT: Right. Okay.

MR. PIROUZNIA: Because without that, we can ignore the opposite scenario when we don't have positive current in both windings, so by having that qualification in our construction, we're making sure we encompass the entire invention.

THE COURT: I got you.

MR. PIROUZNIA: Okay. And so I flip back to slide 12, Your Honor, and you can see that the specification explains, to clarify what's intended by the orientation of the windings, when the two windings both have positive current, the flux generated around the main magnetizing flux path by one should be counterclockwise, whereas the flux generated by the other should be clockwise.

And if you look at Figure 1 on the right, we can see that with the highlighted label.

THE COURT: Right. All right. Hold on.

MR. PIROUZNIA: The first --

THE COURT: Sorry, sorry. I just want to grab

something out of my papers.

MR. PIROUZNIA: Certainly.

THE COURT: Okay. Go ahead.

MR. PIROUZNIA: And so if we look at Figure 1 on the right, we can see our two windings on the left, and the right and we can see these four possible flux paths, 18A, B, C and D. And depending on the direction the current flows, which is related to how the windings are activated with the switches shown in Figure 1, you will get some of those 18 lines, the flux lines.

So let's take our left winding, for example. If we were to close that upper switch that connects the VA, then our flux would generate 18A in this clockwise direction we see coming up and out of the left winding. Likewise, on the right side, if we were to collect the top switch such that the second winding is on VA, we would get flux line 18C, which is going in our counterclockwise direction, and that's exactly what the patent is explaining in this "figure."

When you have both windings with positive current, meaning those top switches are both closed, you get flux lines 18A and 18C. And what you'll also see on this figure is that the other switches could also be closed instead of the upper switches, and in that case, you get your other flux lines.

So if we take the left winding, you can add either 18A or 18B, and for the right winding you can have either 18C or 18D. And you can see from that spec language, it's very close to what MPS has offered in Footnote 6, but you'll see that it describes it in terms of the two windings having positive current. It doesn't describe it in terms of the current flowing toward the output voltage, which is the terminology they've used in the footnote. Otherwise, as far as I can tell, Your Honor, the words match up, and this is where they got their inspiration.

THE COURT: Well, you know what? Part of me, I've got to tell you, part of me wanted to walk in here and say they win because you didn't offer anything in your brief. It was really frustrating. So, you know, kind of like you're getting a second shot at the apple here or a second bite at the apple here. So give me a second to digest all of this.

MR. PIROUZNIA: I appreciate that, Your Honor.

THE COURT: Okay. Go ahead. So the bottom line is, your first piece of evidence is Column 2, lines 24 through 33, which describes an embodiment of the patent.

MR. PIROUZNIA: That's correct, Your Honor.

THE COURT: All right. What else?

MR. PIROUZNIA: And so that part of the specification relates to Figure 1 as we see.

THE COURT: Right.

MR. PIROUZNIA: The patent also gives other examples of orienting in like direction, which we intended to say was the plain meaning when we offered the plain meaning, and I apologize for us frustrating the Court with that, but when we walked through these examples in the slides, we first looked at Figure 1. Now we can look at two more examples, Figures 3A and 3B.

And so if we look at Figure 3A and the patent specification at column 7, lines 15 through 25 on slide 22, we see that windings 42A and 42B are considered in the same orientation because a current flow towards Vc in both of these windings leads to flux flow in opposite directions around the main ungapped path of the core, just as in Figure 1.

So just like Figure 1, which describes it is having a positive current resulting in a colliding flux, you know, flux in opposite directions, Figure 3A says, a current flow toward Vc, which is the same thing in the positive current, will also result in your flux going in opposite directions.

It also tells us this is the same as Figure 1 and both Figure 1 and Figure 3A are examples of windings in a like orientation, and that is all dependent on the context of understanding that for a particular current flow, you'll

have a particular flux flow, whereas Figure 1 had our lines showing what those flux options are, Figure 3A doesn't give us that, but it tells us it's the same thing. It tells us it's another example of what Volterra understood as a plain meaning of --

THE COURT: So the bottom line is so, so far, right, your argument is their plain and ordinary meaning reads out at least two embodiments of the invention?

MR. PIROUZNIA: Our argument is that their plain and ordinary meaning reads out half of the invention. It reads out these two embodiments and it reads out all of the descriptions of that second step of the method claim, the activating step, because that step requires you to alternatively activate the switches 180 degrees at one another.

THE COURT: Right.

MR. PIROUZNIA: What that means, Your Honor, if I can --

THE COURT: Hold up.

MR. PIROUZNIA: If I can flip back to Figure 1, alternatively activating means that sometimes you'll activate this top switch and sometimes you'll activate the bottom switch, so you'll alternate between voltage VA and voltage VB and the 180 degrees between the windings means if you are going to alternate VA for your first winding, then

you're going to activate VA for your second winding 180 degrees a phase later, which in engineering terms, that means half a period later.

So if we have a periodic wave that's going up and down, half of our time period later we're going to do the second winding, and so you can see these switches are independent of each other. We'll do our left switch first. We'll do our right switch half a time period later. And by that express definition of the invention, we see that we're not always going to have our flux colliding. It totally depends on how you're activating your winding and how you activate your windings causes a specific current flow, which causes a specific flux flow.

So that was our problem with MPS' construction. By ignoring the context of the current altogether, you're ruining your invention. You can no longer have your alternatively alternating 180 degrees.

So I apologize for flipping back, but I wanted to make that point to show that for these different alternate activations, sometimes your flux is the in same direction, sometimes it's in opposite directions, and it completely depends on how you're activating the windings and causing that flow.

If we go back to Figure 3A where we left off on, that was our second example from the spec of how we know

we're oriented in like direction.

And then it gives us a third example. That third example is Figure 3B. And if we look at Figure 3B on slide 23 and compare it to Figure 3A, we'll notice two changes in our inductor. The first change is that we've reversed the far orientation of the winding, so whereas Figure 3A, the winding went in circles around the magnet in one direction. Now in Figure 3B, we reversed it. It's the opposite direction.

The second change is that the electrical connections have also been reversed and so whereas before our input --

THE COURT: You've only reversed the direction with one of the windings. Right?

MR. PIROUZNIA: That's correct. This figure only reversed the direction of one of the windings.

THE COURT: All right. I just want to make sure.

MR. PIROUZNIA: Right. It leaves the second winding the same for both figures. You're absolutely right.

So it reverses the physical orientation of the first winding and it also reverses the electrical connection of the first winding. So whereas before we had Vx1 on the left and Vc on the right, now we have Vx1 on the right and Vc on the left, and by doing both of these things, Your

Honor, they basically cancel each other out. Either one would take us out of like orientation, but by doing both, we stay in like orientation, and that's because like orientation depends on both the physical orientation and the electrical connections, as the spec site indicates from column 7, line 26.

And that's why in the beginning when you asked for our plain meaning, I wanted to go to this slide to make sure I used the right word, because the patent is very clear, it's not just the physical orientations, it's not just the electrical connection. We have to take them both together and we have to understand that for certain current flows, we have certain flux flows. And that's how we know we're in like orientation.

THE COURT: All right.

MR. PIROUZNIA: And those are the examples from the spec, Your Honor. The remainder of my slides talk about the motivation behind MPS' reasoning for reading out --

THE COURT: Yes, I don't want that.

MR. PIROUZNIA: I understand, Your Honor.

THE COURT: And going forward, Mr. Oakes, Mr. Russell, I am tempted to say the next time I get this situation, and this is not the only situation in this case where I've got, especially in something this complex for a

jury, and one side, the plaintiff says, oh, plain and ordinary meaning and offers no alternative definition and all it does is criticize the defendant, which there's some actual support for, and I'm not saying I adopt it, I don't hold a hearing. I'm just going with the defendant. I was really tempted to do that in this case. So get the word out.

MR. OAKES: Yes, Your Honor.

THE COURT: Okay. Anything else?

MR. PIROUZNIA: Thank you, Your Honor. No. That was it. Those were the examples from the specification that support our understanding of the plain meaning of this term and do not read out the important aspect of the current flow generating flux.

THE COURT: All right. Thank you.

MR. PIROUZNIA: Thank you, Your Honor.

MR. STEINBERG: Your Honor, Bob Steinberg for MPS.

First of all, I'm actually encouraged that we are talking about flux because this morning I didn't think we were going to have any chance of doing that. We're really close, and I'm surprised by that, which is good news. I think the difference is really slight, too, because what he's talking about we don't disagree with except this point about the second limitation, which we've never briefed,