# EXHIBIT 17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG DIVISION**

REGENERON PHARMACEUTICALS, INC.,

*Plaintiff*,

v.

MYLAN PHARMACEUTICALS INC. and BIOCON BIOLOGICS, INC.,

*Defendants*.

Civil Action No. 1:22-cv-00061-TSK

**CONFIDENTIAL**
**FILED UNDER SEAL**

**REGENERON'S PROPOSED**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

I. FINDINGS OF FACT ..... 1

A. Regeneron's Eylea Product ..... 1

B. Defendants' BLA and Proposed Yesafili Product ..... 5

C. Procedural Background ..... 6

D. Trial Witnesses ..... 7

E. Product Patent ..... 11

1. Claim Construction ..... 13

2. Infringement ..... 14

3. Validity ..... 35

F. Treatment Patents ..... 76

1. Claim Construction ..... 79

2. Infringement ..... 80

3. Validity ..... 91

II. CONCLUSIONS OF LAW ..... 165

A. General Legal Standards ..... 165

1. Infringement Legal Standards ..... 165

2. Validity Legal Standards ..... 165

B. Product Patent ..... 176

1. Conclusions of Law on Infringement ..... 176

2. Conclusions of Law on Validity ..... 180

C. Treatment Patents ..... 228

1. Conclusions of Law on Infringement ..... 228

2. Conclusions of Law on Validity ..... 232

CONCLUSION ..... 271

**1) Indefiniteness**

437. Indefiniteness requires clear and convincing evidence to prove that the POSA could not understand with "reasonable certainty" what "suitable for intravitreal administration" means in the claims, despite the disclosure in the specification and the term's common use in the field. *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014); *see BASF*, 875 F.3d at 1365 (indefiniteness assesses claim language "when read in light of the specification"). Courts have evaluated the claim term "suitable"—including in contexts similar to this one—and repeatedly concluded that this term is not indefinite. *See, e.g.*, *Dey, L.P. v. Teva Parenteral Medicines, Inc.*, 2011 WL 2461888, at *3-7 (N.D.W. Va. June 17, 2011) (finding claim term "suitable for direct administration" not indefinite), *aff'd*, 600 F. App'x 773 (Fed. Cir. 2015); *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 510 F. Supp. 2d 356, 361 (D. Del. 2007) (finding claim term "suitable for intravenous administration" not indefinite); *UCB, Inc. v. Accord Healthcare, Inc.*, 201 F. Supp. 3d 491, 545 (D. Del. 2016), *aff'd*, 890 F.3d 1313 (Fed. Cir. 2018) (finding claim term "suitable" not indefinite because the "record [was] devoid of any evidence that a POSA would need 'clear guidelines' or 'explicit guidance' or 'the upper and lower limits'" to understand the term); *In re Watson*, 517 F.2d 465, 477 (C.C.P.A. 1975) (finding claim term "suitable" not indefinite); *Panasonic Corp. v. Magna Int'l Inc.*, 2022 WL 625089, at *19 (W.D. Tex. Mar. 3, 2022) (same); *Tecnomatic S.p.A v. ATOP S.p.A.*, 2021 WL 1410036, at *19 (E.D. Mich. Feb. 23, 2021), *report and recommendation adopted* , 2021 WL 2309933 (E.D. Mich. June 7, 2021) (same); *Copan Italia S.p.A. v. Puritan Med. Prod. Co. LLC*, 2019 WL 5699078, at *8 (D. Me. Nov. 4, 2019) (same); *Sherwin-Williams Co. v. PPG Indus., Inc.*, 2018 WL 3845239, at *7 (W.D. Pa. Aug. 13, 2018) (same); *Phoenix Licensing, L.L.C. v. AAA Life Ins. Co.*, 2015 WL 3866832, at *7 (E.D. Tex. June 22, 2015) (same); *A.L.M. Holding Co. v. Akzo Nobel Surface Chemistry LLC*, 2014 WL 12927041, at *3 n.19 (D. Del. Nov. 5, 2014) (same).

438. Defendants strain to find ambiguity where none exists—as their own experts' testimony demonstrates. Dr. Rabinow had no difficulty opining which formulations were "suitable for intravitreal administration" in asserting obviousness. Tr. 1171:3-19; *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1368 (Fed. Cir. 2017) (expert's repeated use of terms "implicitly confirms that the terms at issue are ones whose scope is understood with reasonable certainty" by POSA); *Sonix Tech. v. Publ'ns Int'l*, 844 F.3d 1370, 1378-79 (Fed. Cir. 2017) (term not indefinite where expert has "no difficulty in applying it"). And Dr. MacMichael conceded that knowledge about "what formulations would be suitable for intravitreal administration" was "available in the literature," then agreed that the POSA could also consult an ophthalmologist—which Dr. MacMichael never did, despite opining that the term is indefinite. Tr. 1519:7-18. Dr. MacMichael's criticism was not that the scope of the claims was unclear, but rather that the claims were "open-ended and broad." Tr. 1520:3-1521:6. But as the Federal Circuit and its predecessor court have confirmed repeatedly, "breadth is not indefiniteness." *BASF*, 875 F.3d at 1367; *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005); *In re Gardner*, 427 F.2d 786, 788 (C.C.P.A. 1970).

439. Supported only by Dr. MacMichael's conclusory opinion, Defendants argue that "suitable for intravitreal administration" is "subjective." Tr. 1417:9-15, Defs.' Opening Br. 28. But the term bears no resemblance to subjective claim terms like "aesthetically pleasing," which turn entirely on "the preferences of the particular user." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014); Defs.' Opening Br. 28. Defendants identified no circumstances where skilled artisans would disagree whether a formulation was "suitable for intravitreal injection" based on their subjective preferences. *See, e.g.*, *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1346, 1350 (Fed. Cir. 2005) (terms indefinite where they depend solely on

individuals' "subjective beliefs"); *Intellectual Ventures v. T-Mobile USA,* 902 F.3d 1372, 1381 (Fed. Cir. 2018) (claims indefinite if they depend on "the unpredictable vagaries of any one person's opinion"); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 557 F. Supp. 3d 1069, 1076 (S.D. Cal. 2021) (finding claim term indefinite where the patentee's expert "could only offer an opinion for himself" about the precise boundaries of the claim term and "did not feel he could comment for other[s]"); *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 610 (E.D. Tex. 2019) (finding claim term indefinite where the patentee's expert conceded that "[d]ifferent people will have different interpretations" of the claim term's boundaries); *Prolifiq Software Inc. v. Veeva Sys. Inc.*, 2014 WL 3870016, at *7 (N.D. Cal. Aug. 6, 2014) (in finding claim term indefinite, posing questions regarding claim boundaries and concluding that "[s]ome people would say yes to these questions, some would say no."). Dr. Trout testified that "suitable for intravitreal injection" is not subjective; the POSA would assess suitability by looking "to the teachings of the patent," which describe exemplary excipients, PTX-2, at 4 (2:39-48); and then, if needed, looking at "the literature" for suitable excipients with "structures that had been used in intravitreal administration" and consulting an ophthalmologist. Tr. 2112:20-2113:7. Unlike Dr. MacMichael, Dr. Trout cited literature as to how the POSA would interpret the term. *See* Tr. 2114:5-2115:23 (Trout) (citing Chang, PTX-1832 at 6 ("[I]t is preferred to select excipients that have been used in marketed products with a relevant route of delivery"); Peyman, PTX-1758 at 4 (using term "suitable for the treatment of ocular neovascularization")). The Court thus concludes that the term "suitable for intravitreal injection" meets the standard for definiteness, which does not require "absolute or mathematical precision." *See Biosig Instruments v. Nautilus*, 783 F.3d 1374, 1381 (Fed. Cir. 2015); *see Presidio Components v. Am. Tech. Ceramics*, 875 F.3d 1369, 1376 (Fed. Cir. 2017) (claims definite where POSA would know "general approach" to ascertain

whether claim term was met).

#### 2) Written Description

440. A patent satisfies the written description requirement if the specification "allows [the POSA] to visualize or recognize the identity of the subject matter purportedly described"; the patent need not contain "either examples or an actual reduction to practice." *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1308 (Fed. Cir. 2015). Further, the written description requirement does not require that the specification "describe in the specification every conceivable and possible future embodiment of [the] invention." *Cordis Corp. v. Medtronic AVE, Inc*., 339 F.3d 1352, 1365 (Fed. Cir. 2003) (internal quotation omitted). Although the patent need not provide examples or demonstrate reduction to practice, the patent specification here provides both—including multiple formulations with different combinations of excipients and corresponding stability data (PTX-2 at 7-8 (Examples 1-6)), and lists of suitable excipients and amounts (PTX-2 at 4 (2:39-48)). Because the claims are drawn to a specific protein at a specific concentration with specific concentration ranges of polysorbate 20, the Court holds that the specification allows the POSA "to visualize or recognize the identity of the subject matter purportedly described" and thus meets the written description requirement. *See Allergan*, 796 F.3d at 1308.

441. Defendants criticize the claims for reciting the structural categories of "buffer" and "stabilizing agent" instead of specific chemical structures. But Dr. MacMichael acknowledged that buffers were "a known set of structures," Tr. 1509:13-1510:9, as were stabilizing agents, Tr. 1511:14-21, and he readily identified the handful of buffers that the POSA would consider in a formulation, Tr. 1494:6-25. The POSA therefore can "visualize or recognize" the claimed structures. Dr. Trout agreed that buffers and stabilizing agents were "structures well known in the art." Tr. 2110:1-5. For such known classes of structures, the patent did not need to provide an exhaustive description to the POSA. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d

*v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984) ("Even if some of the claimed combinations were inoperative, the claims are not necessarily invalid.").

## CONCLUSION

548. For the foregoing reasons, the Court holds that claims 4, 7, 9, 11, and 14-17 of the Product Patent, claims 6 and 25 of the '572 patent, and claims 11 and 19 of the '601 patent, are valid and infringed.

Date: July 24, 2023

CAREY DOUGLAS KESSLER & RUBY, PLLC

/s/ Steven R. Ruby
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
707 Virginia Street East
901 Chase Tower (25301)
P.O. Box 913
Charleston, West Virginia 25323
(304) 345-1234
sruby@cdkrlaw.com
drpogue@cdkrlaw.com

*Attorneys for Plaintiff Regeneron Pharmaceuticals, Inc.*

*Of Counsel*:

David I. Berl (admitted *PHV*)
Ellen E. Oberwetter (admitted *PHV*)
Thomas S. Fletcher (admitted *PHV*)
Andrew V. Trask (admitted *PHV*)
Teagan J. Gregory (admitted *PHV*)
Shaun P. Mahaffy (admitted *PHV*)
Sean M. Douglass (admitted *PHV*)
Kathryn S. Kayali (admitted *PHV*)
Arthur J. Argall III (admitted *PHV*)
Adam Pan (admitted *PHV*)
Nicholas Jordan (admitted *PHV*)
Haylee Bernal Anderson (admitted *PHV*)
Renee Griffin (admitted *PHV*)
Rebecca Carter (admitted *PHV*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
dberl@wc.com
eoberwetter@wc.com
tfletcher@wc.com
atrask@wc.com
tgregory@wc.com
smahaffy@wc.com
sdouglass@wc.com
kkayali@wc.com
aargall@wc.com

apan@wc.com
njordan@wc.com
handerson@wc.com
rgriffin@wc.com
rebeccacarter@wc.com

Andrew E. Goldsmith (admitted *PHV*)
Evan T. Leo (admitted *PHV*)
Jacob E. Hartman (admitted *PHV*)
Grace W. Knofczynski (admitted *PHV*)
Mary Charlotte Y. Carroll (admitted *PHV*)
Sven E. Henningson (admitted *PHV*)
KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
TEL: (202) 326-7900
agoldsmith@kellogghansen.com
eleo@kellogghansen.com
jhartman@kellogghansen.com
gknofczynski@kellogghansen.com
mcarroll@kellogghansen.com
shenningson@kellogghansen.com

*Attorneys for Plaintiff Regeneron Pharmaceuticals, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2023, I electronically transmitted the foregoing to the Court. Counsel of record for all parties will be served by electronic mail.

*/s/ Steven R. Ruby*
Steven R. Ruby